## GEORGIA CO-OPERATIVE FIRE ASSOCIATION *v.*
## BORCHARDT & COMPANY.

1. The assignment of a fire-insurance policy without the consent of the insurer, after a loss has occurred thereunder, does not render the policy void, but the assignee has the right to bring an action thereon.
2. Such an assignment is valid without the consent of the insurer, although the written transfer of the policy purports by its terms to be subject to the consent of the insurer.
3. Properly construed, the suit in the present case was upon the insurance policies, and not upon a written adjustment of the loss and a promise in writing by the defendant to pay the amount shown by the adjustment.
4. The name, "The Georgia Co-operative Fire Association," by which the defendant was sued, taken in connection with the allegations in the petition, that "the defendant insurance company or association [had] an agent and a place of doing business in the" county wherein the suit was brought, and on a named date issued "its certain policy of fire insurance whereby and by the terms of which it insured against loss by fire" certain property, imported a corporation; and it was not necessary, even as against a special demurrer, to allege the corporate existence of the defendant.
5. An assignment of error in exceptions pendente lite or in a motion for a new trial, that the court erred in refusing to sustain a motion to rule out the testimony of a named witness, does not properly present any question for determination by this court, when the testimony in question is not, either literally or substantially, set forth in connection with the assignment of error in such exceptions or in the ground of the motion for a new trial complaining of the ruling of the court, and no statement thereof is attached as an exhibit to the exceptions or to the motion.
6. In a suit upon a fire-insurance policy, brought by an assignee of such policy against the company which issued it, the defendant can not be held bound by an adjustment of 'a loss sustained under the policy, made after the assignment, between the insurer and the assignor of the policy, unless in such adjustment the assignor acted as the authorized agent of the assignee.

Submitted January 30, — Decided June 14, 1905.

Action on insurance policy.    Before Judge Gale.    City court of Brunswick.    June 25, 1904.

*Ernest Dart,* for plaintiff in error.
*C. P. Goodyear* and *Max Isaac,* contra.

FISH, P. J.  Benjamin Borchardt & Company, a firm composed of Benjamin Borchardt and Albert Fendig, brought an action in the city court of Brunswick, against "The Georgia Co-operative Fire Association," on two fire-insurance policies, alleging that "the defendant insurance company or association had an agent or place of doing business in the county of Glynn.

Both of the policies were alleged to have been issued by the defendant upon a certain stock of groceries and the store fixtures contained in a described building in the city of Brunswick, one of them having been issued on July 6, 1903, to H. H. Brady and by him subsequently transferred, with the consent of the defendant, to L. Bordeaux, and the other having been issued by the defendant on August 17, 1903, to said Bordeaux. The first policy was alleged to have been issued "in consideration of a membership fee of eighty cents and a monthly assessment of eighty cents," and the other "in consideration of a membership fee of forty cents and a monthly assessment of forty cents," the older policy being in the sum of $400, and the other in the sum of $200. It was alleged, that the premiums on each policy had been paid for a full term of one year, and that on October 24, 1903, a fire occurred which totally destroyed the property insured, which then belonged to Bordeaux. It was further alleged that after the fire "an adjuster of said association came to Brunswick and adjusted said fire loss with the said L. Bordeaux in writing for the sum of" $333.14, "and agreed to pay it within a reasonable time," which sum the plaintiffs were entitled to receive by reason of an assignment, dated October 26, 1903, of each of said policies, of which assignment the said association had due notice. It was further alleged, that the adjustment created this sum a liquidated demand, and that the association had neglected and refused to pay the same to either Bordeaux or the plaintiffs. Copies of the material portions of the two policies were attached to the petition as exhibits, and the several assignments referred to were also attached. The defendant filed both general and special demurrers, and, subject thereto, answered. The court overruled the demurrers, and upon the trial there was a verdict for the plaintiffs. The defendant had duly filed exceptions pendente lite to the overruling of the demurrers and also to certain other rulings made during the trial; and, after the verdict, made a motion for a new trial, which the court overruled. In the bill of exceptions error is assigned upon the exceptions pendente lite and also upon the judgment refusing the new trial.

1. The petition was demurred to upon the ground that no cause of action was set forth therein in favor of anybody, and

upon the further ground that the facts set forth therein showed that the plaintiff had no legal right to institute and maintain the suit. It needs no argument to demonstrate that a cause of action was set out in the petition. The only ground urged here in support of the contention that the petition did not show a cause of action in favor of anybody is that the transfers of the policies to the plaintiff, without the consent of the insurer, rendered them void, and section 2102 of the Civil Code is cited to support such contention. That section provides that "An alienation of the property, and a transfer of the policy, without the consent of the insurer, voids it;" but this section is not applicable after a loss occurs. "After the loss occurs, a sale of the property and transfer of the policy does not affect the liability of the insurer, but the assignee may recover." § 2105.

2. The contention that the petition showed no right of recovery in the plaintiff, because each of the written transfers to it was "subject to the consent of the Georgia Co-operative Fire Association," and such consent was not alleged, is without merit. As the section of the Civil Code last cited shows, no consent of the insurer was necessary to render valid assignments of the policies occurring after the loss. After the loss, the claim of the insured, like any other chose in action, could be assigned without in any way affecting the insurer's liability. Civil Code, § 2105; May, Ins. 468; Wood, Ins. 189. It has been held, rightly we think, that a condition in a policy of fire insurance prohibiting an assignment or transfer of the same after loss, without the consent of the insurer, is null and void, as inconsistent with the covenant of indemnity and contrary to public policy. Joyce, Ins. §§ 904, 2322; Roger Williams Ins. Co. v. Carrington, 43 Mich. 252; Alkan v. New Hampshire Ins. Co., 53 Wis. 136; Goit v. Ins. Co., 25 Barb. (N. Y.) 189; Courtney v. Ins. Co., 28 Barb. 116; West Branch Ins. Co. v. Helfenstein, 40 Pa. St. 289. The policies of insurance having been assigned after loss, the assignee simply stood in the shoes of the assignor, and any valid defense which the insurer might have had against the insured could be set up against the assignee. No right of the insurer being affected by the assignments of the policies, it would be a mere act of caprice or bad faith for it to take advantage of the stipulation that the transfers were subject to its consent, by withholding such con-.

sent in order to defeat the claim of the assignee. The assignments being perfectly valid without the consent of the insurer, and its rights being in no way affected thereby, the condition in question was superfluous, and the law will not tolerate its enforcement against the assignee. The words, "subject to the consent of the Georgia Co-operative Fire Association," are to be treated as mere surplusage. Doubtless the assignor, by mere inadvertence or mistake, merely filled out a blank form on the back of the policy for an assignment before loss, or followed the wording of the previous assignment of one of the policies, before loss, to himself.

3. One ground of the special demurrer was, that the petition declared upon a written adjustment of the loss and a special promise in writing by the defendant to pay the amount of such adjustment, and that no copy of the adjustment or of such written promise was attached to the petition, and therefore the suit should be dismissed. We agree with the view taken by the defendant in other grounds of its demurrers, that is, that this was a suit upon the insurance policies, and not upon a written promise to pay the specific amount shown by the written adjustment of the loss. In the first place, the petition did not allege that the defendant or its adjuster promised in writing to pay the amount of the adjustment, or any other amount. The allegation was, that the adjuster of the defendant had "adjusted said fire loss with the said Bordeaux in writing for the sum of three hundred and thirty-three" dollars and fourteen cents "and agreed to pay it within a reasonable time." From this it appeared that the adjustment was in writing, but whether the agreement to pay the amount thereof was in writing did not appear. There was no allegation that anything had been assigned to the plaintiffs except the policies, nor did it even appear whether the assignments of the policies occurred before or after the adjustment; and the right of the plaintiffs to receive the amount fixed by the adjustment was alleged to be " by reason of an assignment of each of said policies, . . . of which assignment the said association had due notice." It is true that in one paragraph of the petition it was alleged, "that although said association had promised to pay said sum of three hundred and thirty-three dollars and fourteen cents aforesaid, within a reasonable time, as

the satisfaction of said loss, said company or association has wholly neglected and refused to pay same to this date, or any part thereof, to either the said L. Bordeaux or these petitioners; and petitioners further show that the said adjustment created this a liquidated demand;" and this allegation as to the amount sued for being a liquidated demand is relied on in support of the ground of the demurrer now under consideration. But this does not show that the plaintiffs were not suing on the contracts contained in the policies. We understand a liquidated demand to be one "where by agreement or otherwise the sum to be paid is fixed or certain." Civil Code, § 2884. So the mere allegation that the adjustment created this a liquidated demand, without more, simply amounts to an averment that the amount of the liability of the insurer upon the policies had, by reason of the adjustment, become fixed and certain. The amount of the insurer's liability might well have been liquidated without in any wise interfering with the right of the insured, or of one to whom the policy had been assigned after a loss, to bring an action upon a breach of the covenants contained in the policies.

4. There was a special demurrer upon the ground that it was not alleged in the petition whether the defendant was a corporation, partnership, or natural person. In *Mattox* v. *State,* 115 *Ga.* 212, the accused was indicted for the offense of simple larceny, the indictment alleging that the owner of the property alleged to have been stolen was the Acme Brewing Company. A demurrer was filed upon the ground that the indictment was defective, for the reason that it did not set forth the ownership of the property, as the term "Acme Brewing Company" was not the name of an individual, and did not import either a partnership or a corporation. The demurrer was overruled, and the accused was tried and convicted. This court held that the name "Acme Brewing Company" imported a corporation, and that "Where in an indictment for larceny the ownership of the goods alleged to have been stolen is laid in a name which imports a corporation, the presumption is that it is the name of a corporation, and it is not necessary, even as against a special demurrer, to allege the fact of incorporation." In *Holcomb* v. *Cable Company,* 119 *Ga.* 466, it was held that the name, "The Cable Company," imports a corporation, and that "when the

name of a party to a suit is such as to import that the party is a corporation, there is a presumption to this effect, which prevails until the contrary is shown." This ruling was likewise made upon a special demurrer. So if the name, "The Georgia Co-operative Fire Association," imports a corporation, or does so when considered in connection with allegations in the petition, it is clear from these decisions, one rendered in a criminal case and the other in a civil case, that, even as against a special demurrer, it was not necessary to allege whether the defendant was a corporation, partnership, or natural person. It is perfectly evident that the name is not that of an individual. It is also evident that this name, when taken in connection with the allegations that "The defendant insurance company or association had an agent and place of doing business in [Glynn] county," and, on named dates, issued "its certain [policies] of fire insurance, whereby and by the terms of which it insured," etc., imports either a firm or a corporation; as an entity, not an individual, engaged in carrying on business, must be the one or the other. The name itself is more appropriate to a corporation than to a partnership, for the name of no individual is disclosed therein. It is clear, from previous decisions of this court, that if the defendant had been engaged in carrying on a regular business under the name, "The Georgia Co-operative Fire Company," the name, thus used, would have imported a corporation. *Wilson* v. *Sprague Mowing Machine Company*, 55 *Ga.* 671; *Cribb* v. *Waycross Lumber Company*, 82 *Ga.* 597; *Smith* v. *Columbia Jewelry Company*, 114 *Ga.* 698; *Mattox* v. *State*, supra; *Perkins Company* v. *Shewmake*, 119 *Ga.* 617; *Holcomb* v. *Cable Company*, supra; *Turner's Chapel A. M. E. Church* v. *Lord Lumber Company*, 121 *Ga.* 376. In each of those cases the name ended with the word "Company," which was not preceded by the conjunction "and," as is usual in partnership names. We can see no reason for making a distinction between the words "company" and "association," when they are respectively used to designate an entity engaged in carrying on business and making contracts. Each of the words is used in defining the other. One of the meanings of the word "company" is "An association of persons for the purpose of carrying on some enterprise or business;" and one of the meanings of the word "association" is a union of persons

in a company or society for some particular purpose." Webst. Dict. So the word "association," when used with descriptive adjectives as the name of a business entity, is as much indicative of a corporation as the word "company" when so used. Other courts, in determining whether a particular name imported a corporation, have made no distinction between these two words. Stein v. Indianapolis Building etc. Association, 18 Ind. 237; Odd Fellows Building Association v. Hogan, 28 Ark. 261. We are of the opinion that the name by which the defendant was sued, when considered in the light of the allegations of the petition, imported a corporation; and there was, therefore, no error in overruling the special demurrer in question.

5. In the exceptions pendente lite, and in one ground of the motion for a new trial, error is assigned upon the refusal of the court, upon motion of the defendant, to rule out all of the testimony of a named witness for the plaintiff. What the testimony of this witness was neither appears in connection with the assignment of error in the exceptions pendente lite nor in the ground of the motion for a new trial complaining of this ruling of the court, and no statement of such testimony is attached to the exceptions or to the motion as an exhibit. Under numerous rulings of this court, therefore, this assignment of error can not be considered.

6. One ground of the motion was, " that the court erred in ruling that the assignment of the policy was sufficient, valid, and legal, and that the sole issue in the case was whether there had been an adjustment of the loss and a promise to pay a specific amount in settlement thereof." One assignment of error upon this charge is, that there were other issues raised by the defendant's plea besides the question as to whether there had been an adjustment of the loss. Another ground was, that the court erred in charging that "if the defendant company, through its agent, Mr. Wilcox, agreed with Bordeaux that his loss sustained amounted to the sum of three hundred and thirty-three dollars and fourteen cents, and agreed to pay that amount in settlement thereof, then the plaintiffs in this case, B. Borchardt & Company, the transferees of these two policies from L. Bordeaux, would be entitled to recover that amount, and would be entitled to recover interest on such amount from the date of the agreement or

adjustment until the same was paid, at the rate of seven per cent. per annum." One assignment of error upon this instruction is, that the plaintiffs "could not recover under an agreement with Bordeaux to pay Bordeaux, unless the agreement to pay was itself transferred to Borchardt & Company." Another ground was, that the court erred in charging that if the jury believed that the plaintiffs had, by a preponderance of the evidence, established that the defendant agreed with Bordeaux that the amount of the loss sustained by him under the terms of the policies was three hundred and thirty-three dollars and fourteen cents, and agreed to pay that amount in settlement of the same, it would be the duty of the jury to find in favor of the plaintiffs the full amount of three hundred and thirty-three dollars and fourteen cents, with interest from the date of the adjustment. Error is assigned upon this instruction, because "the evidence disclosed no legal right of Borchardt & Company to recover a sum agreed to be paid to Bordeaux," and because the charge "placed upon the plaintiffs no burden whatever of showing any connection between Bordeaux and themselves, in order to recover, although the evidence showed no contract or other relation existed between the plaintiffs and the defendant." It is evident, from these instructions, that the court tried the case upon the theory presented in the plaintiffs' petition, that is, that if there was an adjustment of the loss between an authorized agent of the insurer and Bordeaux, the insured, such adjustment was conclusive upon the insurer as to its liability and the amount thereof, in a suit upon the policies, not by Bordeaux, but by Borchardt & Company, to whom the policies had been transferred, before the adjustment, by Bordeaux. Whatever effect the adjustment might have had if it had been made between Borchardt & Company and the insurance company, it seems to us very clear that, in a suit by Borchardt & Company against the insurer, an adjustment of the loss by an agent of the latter with Bordeaux, occurring after he had assigned all his interest in the policies to the plaintiffs, could not be conclusive upon the defendant upon the question of its liability and the amount of the same. Possibly it might in such a suit be used as evidence in the nature of an admission of liability by the insurer, but it could rise to no higher dignity than that. In order for the

adjustment, when made, to be binding upon the insurance company, it had to be also binding upon the then legal owner of the policies. It could not bind one of these parties unless it bound the other. The evidence showed that the general manager and adjuster of the insurer, when he went to Brunswick to adjust the loss, refused to recognize the validity of the assignments of the policies to Borchardt & Company, and hence declined to have any dealings with a member of that firm in connection with the adjustment of the loss. All his dealings in this respect were with Bordeaux, who was not shown by the evidence to have had any authority to represent and bind the firm to which he had previously assigned the policies. Indeed it was not shown that he even assumed to act as the agent of Borchardt & Company. Under the evidence, an adjustment of the loss between the insurance company and Bordeaux was not equivalent to an adjustment between the insurer and the assignees of the policies; and a promise by the insurer to Bordeaux was not a promise to Borchardt & Company. Besides, the charges complained of assumed that in this suit the defendant company would be bound by an adjustment of the loss by the insurer with Bordeaux, whether he was acting as agent of the plaintiffs or not, and, upon this assumption, the jury were instructed to find for the plaintiffs the full amount sued for, if they believed, from the evidence, that the loss had been adjusted at this sum by the defendant with Bordeaux.

The following cases are authority, if any can be needed, for the proposition that Borchardt & Company were not bound by the adjustment between Bordeaux and the defendant company. Fire Association of London v. Blum, 63 Tex. 282; American Central Ins. Co. v. Sweetser, 116 Ind. 370; Brown v. Roger Williams Ins. Co., 5 R. I. 394; Hall v. Fire Association of Philadelphia, 64 N. H. 405; Harrington v. Fitchburg Mutual Fire Ins. Co., 124 Mass. 126. In the Indiana case it was held: "The assignee of a policy of insurance is not bound by any agreement which the assignor may make with the insurance company, subsequent to the assignment, as to the amount which shall be accepted as a satisfaction of its liability." In the Texas case, as in the present one, the policy had been assigned after the loss occurred, and there was, after the assignment, an adjustment of the loss between the

insured and the insurance company, which the court held not to be binding on the assignee. In the other cases cited, the same principle was applied where the policy was made payable, in case of loss, to a creditor of the insured.

The claim of the plaintiffs against the defendant was, under the evidence, an unliquidated demand; the charges of the court excepted to were erroneous, and a new trial must be granted.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent, and Lumpkin, J., not presiding.*