WEST, J., disqualified.

---

WEST FLORIDA GROCERY COMPANY, AND H. T. REDDICK, *Plaintiffs in Error* v. TEUTONIA FIRE INSURANCE COMPANY, *Defendant in Error.*

Opinion Filed October 26, 1917.

Petition for Rehearing Denied January 12, 1918.

1. The provision in a fire insurance policy relative to the consent of the insurer to the transfer of an interest therein, does not apply to an assignment after loss.

2. When an assignment made after loss contains the words "subject to the consent of the insurer," or words of similar import, they will be treated as surplusage, such consent not being necessary to the validity of the assignment.

3. Before a writ of garnishment can be effective there must be an "indebtedness due," at the time of the service of the writ, or at the time he makes his answer, or at any time between such periods, or which may become due absolutely by the lapse of time only. This excludes an indebtedness that may never become due according to circumstances yet to occur, or which is not determinable by a fixed and certain method of calculation. If there is anything contingent or to be done by a person before the liability of another becomes fixed, there is not such an "indebtedness due" as contemplated by the statute to which a writ of garnishment can apply.

VOL. 74, JUNE TERM, 1917.  221

W. Fla. Gro. Co. et al. v. Teutonia Fire Ins. Co.—Opinion of Court.

4. Until the conditions of a fire insurance policy have been complied with by the insured, or his compliance expressly or impliedly waived by the insurer, and until it has exercised its option to replace or restore the property if the policy contains such a provision, a writh of garnishment against the insurer will not be affective.

5. The words "indebtedness due" in the Florida garnishment statute refer to a debt due or to become due absolutely and without depending on any contingency.

6. The provision in the Constitution of Florida that the homestead "shall be exempt from forced sale under process of any court" applies not only to formal and technical process, but to any judicial proceedings, in law or in equity, which seek the appropriation of the property to the payment of debts.

7. Provisions for homestead exemptions whether Constitutional or statutory, should be given liberal construction in favor of the person entitled to them.

Writ of Error to Circuit Court for Walton County, C. L. Wilson, Judge.

Judgment reversed.

*W. W. Flournoy,* for Plaintiffs in Error;

*Daniel Campbell & Son* and *W. T. Bludworth,* for Defendant in Error.

BROWNE, C. J.—This is an appeal by the West Florida Grocery Company and H. T. Reddick from a final decree of the Judge of the Circuit Court of the Fourteenth Judicial Circuit for Walton County, on a Bill of Interpleader by the Teutonia Fire Insurance Co. against

several defendants claiming an interest as creditors of the insured, in the proceeds of a fire insurance policy issued by the complainant in favor of H. T. Reddick, and by him assigned to the West Florida Grocery Company after the loss by fire of the property insured.

Suit was brought by the West Florida Grocery Company as assignee of the insurance policy, against the Teutonia Insurance Company. The deefndant filed four pleas but raised no point on the validity of the assignment of the policy by Reddick to the West Florida Grocery Company. A demurrer was interposed to the first plea, and issue joined on the other three. Shortly afterwards, the insurance company filed its Bill of Interpleader and deposited fourteen hundred and two and 17/100 dollars ($1,402.17) in the First National Bank of DeFuniak Springs to be held by the bank and paid out as the court should decree. The West Florida Grocery Company, H. T. Reddick and a number of Reddick's creditors were made defendants, all of whom filed answers. The creditors of Reddick other than the West Florida Grocery Company, attacked the validity of the assignment of the policy of insurance because it was made after the property insured was destroyed by fire, and without the consent of the insurer, and because the insurance company had been garnisheed in suits against Reddick by various creditors. Reddick in his answer contended for the validity of his assignment of the policy to the West Florida Grocery Company to the extent of his indebtedness to it, but claimed his homestead exemption in any residue in excess of the amount which he was indebted to the West Florida Grocery Company, and one hundred and seventy-three dollars ($173.00) attorney's fees, and such sum as was expended for court costs.

A special master was appointed to take the testimony

of the respective parties, which he proceeded to do, and upon the coming in of his report a final decree was rendered wherein the court held that the insurance company having placed on deposit in the First National Bank of DeFuniak Springs the sum of fourteen hundred and two and 17/100 dollars ($1,402.17), that the company was duly released and discharged from all liability to Reddick and all the other defendants in the cause, and that the assignment of the policy by Reddick to the West Florida Grocery Company was not binding as against certain defendants who had procured writs of garnishment in suits against Reddick, and that after the payment of one hundred and seventy-three dollars ($173.00) to W. W. Flournoy as counsel fee, and the cost of the proceedings, that the balance of the funds be distributed among certain creditors, to the exclusion of the West Florida Grocery Company. The court further decreed that Reddick was not entitled to have any of the funds of the fourteen hundred and two and 17/100 dollars ($1,402.17) set aside to him as part of his homestead exemption.

There are eight assignments of error, but it is not necessary to discuss them *seriatim*.

The issues presented by the appeal are: 1. The validity of the assignment of the insurance policy to the West Florida Grocery Company. 2. The effect of the writs of garnishment on the fund deposited in the bank in settlement of the claim on the insurance policy. 3. The right of Reddick to his homestead exemption as against all the creditors except the West Florida Grocery Company.

The validity of the assignment of the policy by Reddick to the West Florida Grocery Company is attacked on the grounds that the assignment was made without the consent of the insurer. The assignment was made on a

blank form attached to the policy and reads, "The interest of H. T. Reddick as owner of property covered by this policy is hereby assigned to West Florida Grocery Company, subject to the consent of the Teutonia Insurance Company of New Orleans, La., signed H. T. Reddick, dated August 5th, 1912."

The trial judge held because nothing appeared in the pleadings or the testimony to show that the insurer consented to the assignment that the same was not binding as against the defendants who procured the writs of garnishment. We think this is error.

The policy was assigned after loss, and it is a well settled rule that the provision in a policy relative to the consent of the insurer to the transfer of an interest therein, does not apply to an assignment after loss.

It is true that the assignment in this case contains the words "subject to the consent of the Teutonia Fire Insurance Company of New Orleans, La.," but as such consent was not necessary to its validity the condition was superfluous. In the case of Georgia Co-operative Fire Ass'n. v. Borchardt, 123 Ga. 181, 51 S. E. Rep. 429, where this question was considered, the court said: "The assignments being perfectly valid without the consent of the insurer, and its rights being in no way affected thereby, the condition was superfluous, and the law will not tolerate its enforcement against the assignee. The words 'subject to the consent of the Georgia Co-operative Fire Association' are to be treated as mere surplusage. Doubtless the assignor, by mere inadvertance or mistake, merely filled out a blank form on the back of the policy for an assignment before loss." See notes to this case reported in 3 Am. & Eng. Ann. Cases 472.

In the instant case suit on the policy was brought against the insurance company by the assignee, and the

defendant filed four pleas, none of which raised the question of the validity of the assignment. Subsequently the insurance company deposited fourteen hundred and two and 17/100 dollars ($1,402.17) in the First National Bank of DeFuniak Springs and filed its Bill of Interpleader, thus recognizing and giving tacit consent to the assignment.

The next question raised by plaintiffs in error is the effect of the garnishments served by a number of creditors of Reddick on the insurance company. Some of the garnishments were served before, and others after the assignment, but the view we take of this phase of the case, makes it unnecessary for us to distinguish between them. Section 2130 General Statutes of Florida, 1906, gives to a suitor the right to a writ of garnishment "to subject any indebtedness due to the defendant in the hands, possession or control of a third person." The garnishee is required to "state on oath in writing * * * whether he is at the time of the answer, indebted to the defendant, or was indebted at the time of the service of the writ, or at any time between such periods, and in what sum or sums." Gen. Stats. of Florida, Sec. 2102. The question presented here, is whether or not at the time of the service of the writs of garnishment there was any "indebtedness due" Reddick or his assignee, from the insurance company. In answer to the writs, the garnishee on the 30th day of November, 1912, swore that it was not indebted to Reddick, nor was it indebted at the time of service of the writ, or at any time between such periods. This was more than thirty days after the last garnishment had been served. There was no traverse by any of the garnishors of these denials.

Before a writ of garnishment can be effective there must be an "indebtedness due," at the time of the service

226        SUPREME COURT OF FLORIDA.

W. Fla. Gro. Co. et al. v. Teutonia Fire Ins. Co.—Opinion of Court.

of the writ, or at the time he makes his answer, or at any time between such periods, or which may become due absolutely by the lapse of time only. This excludes an indebtedness that may never become due according to circumstances yet to occur, or which is not determinable by a fixed and certain method of calculation. If there is anything contingent or to be done by a person before the liability of another becomes fixed, there is not such an "indebtedness due" as contemplated by the statute to which a writ of garnishment can apply.

We are strengthened in our conclusion by the provision of the statute which compels the garnishee to answer upon oath the amount of his indebtedness to the principal debtor. If the amount of the claim is not capable of being ascertained, if there may never be any indebtedness, if there are certain things unperformed upon the performance of which liability depends, the garnishee cannot comply with the requirements of the statute.

We think it is quite certain from the language of our statute, that until the conditions of the insurance policy have been complied with by the insured, or compliance therewith expressly or impliedly waived by the insurer, and until it has exercised its option to replace or restore the property, that the writ of garnishment will not be effective.

The policy sued on contained the usual conditions found in standard policies, which were to be performed by the insured, or their performance waived by the insurer, before there would be any indebtedness due from the insurance company to the insured. After compliance by the insured with the requirement as to proof of loss, the insurer under the conditions of the policy had the option to "replace the property lost or damaged, with other or like kind and quality within a reasonable time on

giving notice, within thirty days after the proof herein required of its intention so to do." If the insurer exercised his right under this option and replaced the goods, there would be no indebtedness due from it to the insured. In construing a similar clause in an insurance policy, the Supreme Court of Michigan held that "Under a policy of insurance giving the insurer the right to elect whether to replace the articles lost or damaged, or to take the goods at their appraised value, or to rebuild or repair the building, etc., the insurance company, after loss and while this right of election continued undetermined, is not liable as garnishee of the insured; their liability to pay money to the insured cannot be said to have become absolute and independent of any contengency, as required by the statute (Comp. L. 6503, Sub. 3), so long as this right of election remained open." Martz v. Detroit Fire & Marine Ins. Co., 28 Mich. 201. It is true that the garnishment statute of Michigan differs from ours, but the difference is in phraseology and not in effect. Thus, the former enacts that no one shall be adjudged a garnishee by reason of any money or other thing due from him to the principal defendant unless it be at the time of service of the writ of garnishment due or to become due absolutely and without depending on any contingency. The words "indebtedness due," as used in our statute clearly refer to a debt "due or to become due absolutely and without depending on any contingency," and in effect is the same as the Michigan statute. In Lovejoy v. Hartford Fire Insurance Company, 11 Fed. Rep. 63, the court said: "Were, then, these claims contingent claims, within the meaning of the authorities, which could not be reached by garnishment? There is no doubt that it is the well settled law now that the assured—the person to be benefitted by a policy of insurance—must, after the

loss has occurred, furnish proofs of loss; that is a condition precedent to the maintenance of an action by the assured.  I have one of the policies in question before me, and the provision is:  Persons sustaining loss or damage by fire shall forthwith give notice of such loss to the company in writing, and, as soon after as possible, render a particular account of such loss, signed, and sworn to by them, and stating, etc.  (Here the court read the usual condition as to magistrate's certificate and proofs of loss).  Now it is very clear to my mind, in the light of the authorities, that there was no indebtedness from the insurance companies concerned in this loss, or who had the policies upon this stock, until this condition precedent had been complied with.  Whether it ever would be complied with or not was a contingency."

At the time the writs of garnishment were served on the insurance company, there was not an indebtedness due from it to Reddick which was subject to garnishment, and they were premature and ineffectual, and the lower court erred in sustaining their validity.

We will now consider the right of Reddick to a homestead exemption in the proceeds of the insurance policy as against all his creditors except the West Florida Grocery Company.

In his answer to the Bill of Interpleader he claimed his exemption, and he testified before the master, and it was not disputed, that he was the head of a family residing in the State of Florida, and that his family was dependent upon him for support, and that he had no other funds or property.

The Constitution of our State provides, "A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in

this State, together with one thousand dollars' worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court."

The exemption of "one thousand dollars' worth of personal property" is as sacred as any other part of the homestead exemption, and a person claiming it is entitled to the protection of the courts in any proceeding which seeks the appropriation of it to the payment of debts. It is true that the constitutional provision is that it "shall be exempt from forced sale under process of any court," but that will not be construed to mean that where it is sought to take from a person rightfully claiming his homestead exemption of "one thousand dollars' worth of personal property," he cannot protect himself except from a forced sale. Such a construction would defeat the beneficent purpose of the Constitution, where, as in the instant case, the exemption claimed is in money.

We think that the exemption provided for in the Constitution applies not only to formal and technical process, but to any judicial proceedings, of law or in equity, which seek the appropriation of the property to the payment of debts. In Hines v. Duncan, 79 Ala. 112, 58 Am. Rep. 580, the court said, "statutes conferring on a debtor the right to exemption of property from sale for the payment of debts have been generally regarded as founded in a humane and enlightened policy, having respect to the common welfare, as well as to the benefit of the individual debtor. Their obvious purpose is to secure to each family a home and means of livelihood, irrespective of financial misfortune, and beyond the reach of creditors; security of the State from the burden of pauperism, and of the individual citizen from destitution. Such statutes are entitled to a liberal construction, a

construction in conformity with the benevolent spirit which moved their enactment. Whilst the language of the statute is 'shall be exempted from levy and sale under execution, or other process for the collection of debts,' a formal, technical process is not requisite. The exemption is, in spirit and substantially, from the payment of debts; and the property is exempt from sale by either process of law or in equity, the subject of which is its appropriation to the payment of debts."

Reddick was entitled to an exemption not exceeding a thousand dollars in the residue of the fourteen hundred and two and 17/100 dollars ($1,402.17), after deducting the amount of his indebtedness to the West Florida Grocery Company, the attorney's fees which were ordered to be paid to W. W. Flournoy, and the costs of the proceedings under the Bill of Interpleader in the court below, and the lower court erred in refusing to so order.

For the errors set forth herein, the judgment of the lower court is reversed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.