24277. DOUGLAS v. THE STATE.

*L. C. Harrell, I. J. Bussell,* for plaintiff in error.

*M. H. Boyer, solicitor-general,* contra.

MACINTYRE, J. Harvey Barber, who lived in Alma, Georgia, Merritt Tanner, who lived in Ware county, Georgia, and Alma Douglas, who lived in Alma, Georgia, were convicted of burglary. Alma Douglas moved for a new trial; the motion for a new trial was overruled, and she excepted. Jesse D. Haley, who lived in Waycross, Georgia, an accomplice, testified that he and the above-named defendants left their respective homes on Saturday and rode around in Alma Douglas's green Chevrolet automobile, finally spending the night in a tourist camp, and remained away from their homes all day Sunday; that they all four went to Lumber City late Sunday afternoon and burglarized the Suwanee store late that night (giving the details of the burglary), and that he was arrested when he and the above-named defendants were preparing to burglarize another store later on the same night in Alma, Georgia. The corroborating testimony by other witnesses—not accomplices—was in part: that Alma Douglas, the plaintiff in error, together with the other alleged perpetrators of the crime, was seen in Lumber City in her green automobile several times on Sunday night; that she was driving her automobile a part of the time; that the last time they were seen in Lumber City was about 10:30 or eleven o'clock; that the robbery occurred later the same night; that early the next morning Barber, Tanner, and Alma Douglas, who were traveling in a Chevrolet car (it was either blue or green), stopped at a gasoline filling station between daylight and sunup;

that the filling-station operator was distantly related to Alma Douglas and positively identified her. The operator testified, "Barber asked me what size shirt I wore, and I told him 17 [shirt]; he said to the girl [Alma Douglas]: 'Look and see if I have got a 17 [shirt];' I don't remember which one looked; I think he picked up a box and looked through it, and, if I am not mistaken, he found the 17 [shirt];" that the shirt, which was later identified as a part of the stolen property, was thereupon sold to the operator; that Barber complained of being sleepy, wanted to stop and rent a cabin; some one suggested that they go on to Waycross; that later the same morning, about 7:30 o'clock, Barber and Tanner and a lady in a green Chevrolet car went to the operator of a tourist camp and rented cabins 4 and 5; that the operator didn't look at the lady closely; that he did not know whether Alma Douglas was the lady or not. The wife of the operator testified, "the lady was small and dark-headed, I could not identify her; in size, I suppose she was about the same as this woman Alma Douglas, and she had the same color hair;" that when these people left the tourist camp Tanner said that "they left some packages and they would be back after them that night;" that the officers that same day searched the cabins occupied by the defendants and found some of the stolen goods in packages therein; that no one had occupied the cabins between the time the defendants left them and the time the officers made the search; that the operator of the tourist camp accepted a shirt and 70 cents as rent for the cabins. There was other testimony from which the jury were authorized to find that the shirt sold to the operator of the filling station and the shirt sold the operator of the tourist camp, and some of the articles found in the cabins occupied by them at the tourist camp, were articles stolen at the time of the burglary, and that Alma Douglas, Barber and Tanner were all arrested on Monday, and that a green Chevrolet car was found at the place where Alma Douglas was arrested, which place was not her home.

The Supreme Court in the case of *Whaley* v. *State,* 177 *Ga.* 757 (171 S. E. 290), said: "To warrant a conviction of felony on the testimony of an accomplice, it is necessary that the accomplice be corroborated, and 'the corroborating circumstances should be such as, independently of his testimony, to lead to the inference that the defendant is guilty. Facts which merely cast on the de-

fendant a grave suspicion of guilt are not sufficient.' *McCalla* v. *State,* 66 *Ga.* 346; *Callaway* v. *State,* 151 *Ga.* 342 (106 S. E. 577); *Langston* v. *State,* 153 *Ga.* 127 (3) (111 S. E. 561). But 'it is not required that this corroboration shall of itself be sufficient to warrant a verdict, or that the testimony of the accomplice be corroborated in every material particular. . . The sufficiency of the corroboration of the testimony of the accomplice to produce conviction of the defendant's guilt is peculiarly a matter for the jury to determine. If the verdict is founded on slight evidence of corroboration connecting the defendant with the crime, it can not be said, as a matter of law, that the verdict is contrary to the evidence.' *Hargrove* v. *State,* 125 *Ga.* 270, 274 (54 S. E. 164)." Applying the rule thus laid down by the Supreme Court, the testimony of the accomplice was sufficiently corroborated to authorize the conviction.

There was no demurrer to the indictment. The State introduced evidence to the effect that the storehouse burglarized was the storehouse of "The Suwanee Stores." Nothing appeared to show that "The Suwanee Stores" was not a corporation. The judge charged the jury that "the name 'The Suwanee Stores' imports a corporation, and if nothing else appears, it would be presumed that it was a corporation. I charge you that this is a mere presumption and is subject to be rebutted by evidence, and, to show that it is not a corporation, by evidence or testimony." It has been held that, "whether a name imports a corporation should, as a general rule, be left to judicial knowledge." *Saint Cecilia's Academy* v. *Hardin,* 78 *Ga.* 39 (3 S. E. 305). "If it is a financial, commercial, manufacturing name, or other kindred purpose, the usual subjects of incorporation, such name should import a corporation." *Saint Cecilia's Academy* v. *Hardin,* supra. "It would seem, however, that if the name imported a corporation and raised a presumption of corporate existence for the purpose of pleading, it would also raise such a presumption for the purpose of evidence, and that it would be incumbent upon the accused to prove affirmatively that no such corporation existed." *Mattox* v. *State,* 115 *Ga.* 212, 221 (41 S. E. 709). It was also held in *Crawford* v. *State,* 68 *Ga.* 822, "where an indictment charged the defendant with 'breaking and entering the depot of the Savannah, Florida and Western Railway, a corporation chartered by said State, doing business un-

der said name,' the allegation that the owner was a corporation chartered by said State was mere surplusage and need not be proved." And in the case of *Berry* v. *State,* 92 *Ga.* 47 (17 S. E. 1006), it was said: "The indictment under which the defendant was convicted charged that he broke and entered 'the storehouse of Woodlawn, Leo and Macedonia Alliance co-operated store.' "He moved to arrest the judgment because the indictment failed to allege ownership. This objection, if good, should have been taken before trial, and is not cause for arresting the judgment after verdict of guilty." It is thus indicated that in the absence of demurrer, the court was authorized to hold that the names "Savannah, Florida and Western Railway," and the "Woodlawn, Leo, and Macedonia Alliance Co-operated Store," for the purpose of the indictment imported a corporation; and in *Matlox* v. *State,* supra, it was stated that if the name imported a corporation and raised a presumption for the purpose of pleading, it would raise such a presumption for the purpose of evidence, and this presumption prevails until the contrary is made to appear. We are therefore of the opinion that where the indictment for burglary alleged the ownership of property in a name appropriate for a corporation or which may fairly import corporate character, and the capacity to own the property is not put in issue, the capacity to own, and the corporate existence, if necessary, would be intended for the purposes of the indictment (the pleading), and that it would also raise a presumption for the purpose of evidence; hence it would be incumbent upon the accused to prove affirmatively that no such corporation existed. *Matlox* v. *State,* supra; Thompson on Corporations, 1931 Supp., 24. In the instant case there was no demurrer, and we do not think we should say that the judge erred in holding, for the purposes of this penal section, that the name "The Suwanee Stores" imported a corporation, and that the presumption prevailed until the contrary appeared. See, in this connection, *Bremen Foundry & Machine Works* v. *Boswell,* 22 *Ga. App.* 434, 436 (96 S. E. 182); *Haynes* v. *Armour Fertilizer Works,* 146 *Ga.* 832 (92 S. E. 648); *Eslinger* v. *Herndon,* 158 *Ga.* 823 (124 S. E. 169); *Hatfield* v. *State,* 76 *Ga.* 499, 500; *Walker* v. *Mayor &c. of East Rome,* 145 *Ga.* 294, 297 (89 S. E. 204); *Georgia Co-operative Fire Asso.* v. *Borchardt,* 123 *Ga.* 181 (51 S. E. 429, 3 Ann. Cas. 472). The defendant contends that the charge "placed an

additional [too great a] burden on the defendant" in that when the accused pleaded not guilty, "she then placed the burden on the State to prove each and every material allegation as set out in the indictment against her." The burden of proof should not be confused with the presumption of innocence. The burden of proof is procedural. It has been said, "a distinction between burden of proof and burden of evidence should be recognized. In criminal cases the burden of proof never shifts, but the burden of evidence may shift with alternating frequency." Underhill's Criminal Evidence (3d ed.), 45. The burden of proof is a rule of procedure which confers only temporary benefit upon the accused. Under the burden of proof the prosecution is compelled in the first instance to introduce evidence making out prima facie proof, which may be overcome by counter evidence. The presumption of innocence is a substantive law existing before any evidence is offered, and accompanying the accused throughout the trial down to the moment of conviction. Hence, if a prima facie case against the accused is made out, though the defendant offer no evidence, the court has no legal power to direct a verdict. The charge excepted to did not place upon the defendant a greater burden than the law authorized.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*