H. S. SHADID, Ameel Phil Shadid, Sam Sameer Shadid, and Alexandria Shadid, a Partnership d/b/a Shadid's Super Market, Plaintiffs in Error,

v.

The AMERICAN DRUGGIST FIRE INSURANCE COMPANY, a Corporation, Defendant in Error.

No. 39908.

Supreme Court of Oklahoma.

June 11, 1963.

Rehearing Denied Nov. 5, 1963.

Charles Hill Johns, Gomer Smith, Jr., Charles A. Shadid, Oklahoma City, for plaintiffs in error.

Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, Fred M. Mock, George F. Short and Robert S. Baker, Oklahoma City, of counsel, for defendant in error.

BLACKBIRD, Chief Justice.

This is an action instituted by plaintiffs in error, hereinafter referred to as plaintiffs, against the defendant in error, hereinafter referred to as defendant, to recover the proceeds of two fire insurance policies. The two policies, in the total amount of $10,000, were issued by defendant, through its Oklahoma City agent, Forrest Dellinger, on January 20, 1956, and February 12, 1956, respectively, each for a term of five years thereafter, to one Clarence Wythe, d/b/a Wythe Drug Store, as the insured. Thereafter, in November, 1957, Wythe and his wife, Mrs. Fern Wythe, were divorced, and, by the terms of the divorce decree, title and ownership of Wythe Drug Store passed to Mrs. Wythe.

On July 18, 1959, Mrs. Wythe sold the drug store, and transferred its title, to one of the plaintiffs, H. S. Shadid, d/b/a Shadid Super Market, which said market occupied part of the same building in which the drug store was located, and in which market all of the plaintiffs claim to be partners.

On September 26, 1959, a fire occurred in the building, completely destroying the contents of the drug store, and incurring a loss to its owner, or owners, in at least the amount of the fire coverage provided in the subject policies.

Thereafter, plaintiffs lodged their claim of loss with defendant, and demanded payment thereof under the policies. Upon defendants refusal to pay said claim, plaintiffs instituted this action in November, 1959.

At the trial of the cause before a jury, defendant, in support of its position that it was not liable to plaintiffs under the terms of the policies, invoked a provision—common to both policies—which reads:

"Assignment of this policy shall not be valid except with the written consent of this Company."

The trial court excluded from the evidence of the case an instrument plaintiffs attempted to introduce therein, as a written assignment of said policies, purportedly executed by Fern Wythe on December 21, 1960, long after the fire, and not until after this action was commenced.

By way of attempting to demonstrate that there had been a compliance with the above-quoted written-consent-to-assignment provision of the policies, plaintiffs' argument in their brief attempts to couple the court-rejected written assignment of December, 1960, supra, with a letter previously written the plaintiff, Ameel Phil, or Phil Shadid, by Mrs. Pearl Ivey, Forrest Dellinger's secretary, on August 5, 1959—less than a month after the drug store changed hands, in which the writer referred to her previous conversation with Shadid, informed him of the expiration dates of the policies, and of the amount of their premiums, and told him, " * * * if you want this coverage transferred to your name, we will be glad to do this." In view of the fact, however, that Mr. Shadid was allowed to testify, in substance, that plaintiffs' purchase of the drug store from Mrs. Wythe included the acquisition, from her, of the policies in question (despite the fact that they were not mentioned in the store's Bill Of Sale, or any other written instrument of the store's sale or conveyance) and of the further fact that the absence of a written assignment of the policies from Mrs. Wythe (if she had orally "assigned" or "transferred" them at the time of the store's sale) was apparently no bar to plaintiffs' recovery under the instructions given by the

trial court, we think the pivotal question submitted to the jury was whether or not Shadid ever requested defendant's consent to (any kind of) a policies' assignment (written or oral).

In the posture of the case, as it went to the jury, it was amenable to disposition on a simple question of fact, to-wit: Was there ever indicated to the defendant company a desire on the part of the plaintiffs to become, or to be regarded, as the insured in such policies, issued by defendant to "Clarence Wythe d/b/a Wythe Drug Store", and, on the date of the fire loss, still standing in that name. If the jury may be regarded as having, by its verdict, properly given this question of fact a negative answer, then the so-called doctrines of "Waiver" and/or "Estoppel" do not necessarily enter into our consideration, of that portion of plaintiffs' argument directly alluding to the trial court's alleged error in overruling their motion for a directed verdict.

On the primary question of whether or not there was ever indicated to the defendant company any desire on the part of the plaintiffs to obtain its consent to a transfer, or assignment, of the policies from the Wythe ownership to them, the testimony elicited on behalf of the plaintiffs was in direct conflict with the testimony of the aforementioned Mrs. Ivey, who testified on behalf of the defendant.

The testimony of plaintiffs' principal witness, Phil Shadid, substantially coincided with Mrs. Ivey's in establishing that soon after plaintiffs took over operation of the drug store from Mrs. Wythe, Mrs. Ivey visited it and conversed with the said Mr. Shadid about the fire insurance coverage on the store. There is also no conflict between the testimony of these two witnesses, as to their conversation on that occasion, in so far as it related to the particular, or precise, fact question now under consideration.

There is little, or no, doubt but that Mrs. Ivey and Mr. Shadid had never met before. Nor can there be much doubt that Mr.

Shadid knew little, or nothing, concerning the details of the fire coverage on the store, until that visit from Mrs. Ivey. She testified that, on that occasion, she told him of the terms and premiums of the two policies her employer's agency had previously sold Wythe on the store, and also told him that, if he wanted such coverage continued, it would have to be transferred to his name. Mr. Shadid confirmed the latter, though he denied that, until Mrs. Ivey followed up her visit with her aforementioned letter of August 5, 1959, he ever knew the amounts of the premiums prescribed in the policies.

The crucial conflict between the testimony for the plaintiffs, and that of Mrs. Ivey for the defendant, concerns a later telephone conversation between her and Mr. Shadid, which he testified occurred on approximately August 10, 1959, and in which (according to his testimony) she inquired " * * * if we had made our decision on the * * * policies", and he replied: "Yes. We have definitely decided to continue them." Mrs. Ivey emphatically denied that after Mr. Shadid had received her letter, he ever (before the fire) apprised her of any decision by him (or his plaintiff associates) to ask for, or assent to, the two then-existing fire insurance policies being continued in force and effect on the store. She maintained that at the only later time, or times, she ever talked to Shadid about the matter, he indicated that he and his associates had not decided whether to have the policies made over to them, or not. While plaintiffs introduced the evidence of one witness who testified to being in Mr. Shadid's presence when he had a telephone conversation with Mrs. Ivey in August, 1959, and this testimony tended to corroborate Mr. Shadid's testimony above referred to, we cannot say that this would have justified the trial court in sustaining plaintiffs' motion for a directed verdict. In Hales v. Henry Black, Ltd., Inc., Okl., 264 P.2d 355, we held:

"For the purposes of a motion by plaintiff for directed verdict it must be assumed that defendant's evidence is

true, and the trial court should not direct a verdict where it is necessary to weigh the evidence to determine where the preponderance lies; to do so constitutes reversible error."

In view of the above described pro and con evidence on the issue of whether or not, at the time of the fire loss, plaintiffs had ever apprised defendant of a decision, or desire, on their part to assume the role of "insured" in the subject fire insurance policies, and of the above-quoted rule governing the trial court's prerogative in passing upon a motion for a directed verdict, plaintiffs' argument, under their first proposition, fails to demonstrate error in refusing plaintiffs a directed verdict. The issue which that evidence concerned is little, if any, different in basic, or material, essence from the one submitted to the jury under said court's instruction "No. 7" as follows:

"If you should find that at the time of the fire loss in question plaintiffs had not decided whether or not they desired to have the policies transferred and had continued to tell defendant's agent they had not decided what to do about a transfer of said policies, then your verdict should be for the defendant."

While the giving of this, and certain other instructions, constituted one of the nine grounds set forth in plaintiffs' motion for a new trial and one of the ten grounds set forth in their petition in error, they wholly fail to relate to it any of the argument or authorities set forth in their brief. Thus the trial court's submission of the cause to the jury on the theory that plaintiffs' recovery would be barred if they never indicated to defendant any desire to become a party, or parties, to the insurance contracts in question, must be considered as waived or abandoned. See Klaus v. Fleming, Okl., 304 P.2d 990; Barker v. West Pub. Co., Okl., 268 P.2d 248, and Woodruff v. Gunkel, 208 Okl. 301, 255 P. 2d 941.

■■ Plaintiffs' argument, under their Proposition Two, that they were entitled to recover, depends upon the efficacy of the aforementioned written assignment of the policies Mrs. Wythe gave them after the fire. Consideration of this argument, in turn, hinges upon whether the trial court erred in excluding this instrument from the evidence of the case. Our answer to this question must be in the negative. This is for the reason that long before the date of her execution of said writing, Mrs. Wythe had conveyed all of her right, title, and interest in the drug store. Consequently, on said latter date, she had no insurable interest in said subject of the policies' coverage. As said in Foley v. Manufacturers' & Builders' Fire Ins. Co. of New York, 152 N.Y. 131, 46 N.E. 318, 43 L.R.A. 664:

"It is an undoubted principle in fire insurance that there must be an insurable interest in the insured, or an insurable interest which he represents in the subject of insurance existing at the time of the happening of the event insured against, to enable him to maintain an action on a fire policy. This flows from the nature of the contract of fire insurance, which is a *contract of indemnity;* and *where there is no interest, there is no room for indemnity.* * * *" (Emphasis ours.)

The cases plaintiffs cite in support of their argument that Mrs. Wythe's assignment was effective, even though the subject of the insurance had already been destroyed, concern situations in which those insured under the policies involved, had insurable interests, or valid claims that had already matured at the time of their assignments, in which situations the subject of the assignments were choses in action against the insurors. If, on the date of Mrs. Wythe's purported assignment, there had been anything in being, upon which the assignment, or the policies, could have operated, or to which either could have applied—that is, either the property, or a chose in action growing out of the loss thereof—then there might be a basis for the position that said assignment transferred some right to plaintiffs. As we have seen, however, when the assignment was belatedly executed on December 21, 1960, the ostensible assignor,

Mrs. Wythe, could neither claim any loss from the fire, nor assert that, by reason of the fire, any such claim had matured, or ripened, into a chose in action in her—nor was the property—the subject of the insurance coverage—any longer in existence. Therefore, the purported written assignment was little more than a meaningless piece of paper. It assigned, or transferred, nothing other than, perhaps a right to a refund of any unearned premiums, or portions thereof paid on the policies by the former owners. Consequently, the trial court did not err in excluding said writing from the evidence of the case. Without the introduction of such proof, the verdict and judgment in this case cannot be held contrary to law and/or to the evidence in the case. Said judgment is therefore affirmed.