Blanche LIVELY, Plaintiff in Error,

v.

Bill J. DAVIS, Defendant in Error.

No. 40545.

Supreme Court of Oklahoma.

Feb. 1, 1966.

Charles E. Grounds, Seminole, for plaintiff in error.

Sam L. Wilhite, Anadarko, for defendant in error.

WILLIAMS, Justice.

Bill J. Davis, defendant in error, hereinafter designated as plaintiff, brought this action against Blanche Lively, plaintiff in error, herein designated defendant, to recover upon a promissory note and for foreclosure of the real estate mortgage securing the obligation. At the close of the evidence the trial court sustained plaintiff's motion for directed verdict and ordered judgment for plaintiff as prayed in the petition. The matters necessary for consideration of the appeal, as disclosed by the pleadings and evidence, are fairly reflected by the matters hereafter summarized.

Prior to October 28, 1960, Mabel Bearden owned the Sunset Motel in Anadarko, Oklahoma. A Mrs. Gurley, experienced in the buying, selling and operation of motels, had been in possession of and had operated the motel from and after July 17, 1960, pursuant to contract of purchase dated July 14th, 1960, executed October 28, 1960, together with a note and mortgage and on which date Bearden executed a warranty deed to the premises. These instruments were placed in escrow in a Duncan, Okla-

homa bank. The note and mortgage set forth Gurley's obligation in the amount of $5,000.00 plus interest, due within twelve months from date of compliance with title requirements, and provided for attorney fees in event of default. The mortgage, securing the loan in the amount of the note, was not filed for record at the time of execution.

On October 31, 1960, before the above transaction was closed, Gurley entered into negotiations for sale of this property to defendant. These parties discussed the proposed transaction with an attorney, and under their combined direction a contract for sale and purchase of the property, including personalty, a bill of sale and a warranty deed were prepared. The contract of sale recited the purchaser's (defendant's) agreement to purchase the property subject to the mortgage indebtedness against both realty and personalty. The agreement also recited these parties' understanding of the escrow arrangement under which the Gurley transaction for purchase of the property was held pending compliance with title requirements. The contract further recited that upon closing Gurley would deliver an abstract showing marketable title " * * * subject, however, to the mortgages and 'vendor's lien' above described." Other provisions of the instrument contained specific references to the mortgages and the "vendor's lien".

On November 3, 1960, Gurley executed a Bill of Sale to all personalty involved. This instrument also set forth existing chattel mortgages against the personal property, as well as "vendor's lien" arising under the contract between Bearden and Gurley. This same day Gurley, joined by her husband, executed a warranty deed to defendant conveying the premises subject to the specified mortgages. Such deed, while excepting other encumbrances, did not mention Bearden's "vendor's lien". The evidence of a reputable attorney who drafted the instruments for the parties, relative to this omission, was that this occurred because the Bearden mortgage was in es-

crow and had not been recorded in Caddo County at the time he had examined the abstract covering the property; that, however, both Gurley and defendant had read all the instruments before signing same; and that reference to the vendor's lien appeared in the contract but not in the deed because the parties did not advise him there was a mortgage.

Plaintiff's petition, filed November 24, 1961, alleged matters surrounding the real estate transaction above related and execution of the Gurley note secured by a mortgage; execution of the contract of sale and bill of sale between Gurley and defendant, and the subsequent assignment of the note and mortgage by Bearden to plaintiff for a valuable consideration; that the mortgage provided for sale without appraisement in event of default in payment, and that plaintiff elected to have same sold without appraisement. The petition sought judgment, including interest in the amount of $5350.00, together with judgment for additional interest from November 28, 1961, and attorney's fees, and for foreclosure of the mortgage and sale of the property.

Defendant answered by specific denial of the matters alleged, other than admitting the property was properly described, due execution of the warranty deed from Bearden to Gurley, and subsequent conveyance from Gurley to defendant.

By cross-petition defendant alleged plaintiff to be a stranger to the transaction who had purchased the note after maturity, was not a holder in due course, who took the note and mortgage subject to all defenses available against the original payee or mortgagor. She further alleged that all negotiations and agreements, either written or oral, were merged into the warranty deed conveying this property to defendant, and the plaintiff, the son of Myrtle Gurley, knew the warranty deed in question conveyed this property to defendant free of the alleged incumbrance.

A second cause of action alleged that plaintiff's pretended claim constituted a cloud upon defendant's title, as against

which defendant asked that her fee-simple title under the warranty deed from the Gurleys be quieted and confirmed, free and clear of liens and claims by plaintiff.

Plaintiff's reply denied all matters alleged by defendant inconsistent with the allegations of the petition. As we interpret the reply to the answer and cross-petition, plaintiff alleged: (1) mistake in failing to mention this mortgage as an exception in the deed; (2) defendant failed to assume the mortgage in the deed as she had agreed in writing to do; (3) the parties did not intend the contract of sale should be merged into the deed; (4) part of the consideration for the deed was defendant's agreement to assume the mortgage lien; (5) the provisions of the contract of sale were such that it was not possible to merge the contract into the deed.

The issues formed by the pleadings were tried to a jury upon defendant's demand that a jury was required because the matter presented issues of fact involving recovery of money as well as the recovery of real estate.

Upon conclusion of the evidence the trial court stated:

"The Court is of the opinion that all of the elements of defense are dependent upon the fact of whether or not the defendant knew and acknowledged the existence of the note and mortgage in the sum of $5,000.00 to Mrs. Bearden from Mrs. Gurley, and that the same was recognized as a lien on the property, and that she agreed to take the property subject to the note and mortgage and assume the indebtedness thereon, and the fact that she had made her investigation of alleged irregularities in the contract and then signed and accepted the contract and went into possession of the property and has been in possession since the first of November, 1960, and that there is no pleading or attempt to rescend the contract, nor is there any element of fraud alleged, for that reason the Court feels that the motion of the plaintiff should be grant-

ed, and the Court does direct the Jury to return a verdict in favor of the plaintiff and against the defendant, for the sum of the note and mortgage."

The Court then took the case from the jury, stating there was no issue for the jury to consider, and judgment accordingly was entered for plaintiff.

Defendant's argument for reversal of the judgment is advanced under three propositions, all of which are predicated upon the asserted error of the trial court in sustaining plaintiff's motion for directed verdict, withdrawing the case from the jury and rendering judgment for plaintiff. During trial the defendant pleaded, and sought to establish by the evidence, that all the agreements and negotiations, oral and written, were merged into the warranty deed received by defendant, and since such deed contained no exception of the mortgage indebtedness sued upon, the plaintiff could not recover.

In opposition to defendant's case the plaintiff contended the contract of sale and bill of sale were not intended to be merged into the deed, but that defendant purchased with full knowledge of the Bearden indebtedness and took title to the motel subject to the vendor's lien in Bearden's favor covering such indebtedness. In this connection, plaintiff alleged such mortgage had not been filed in Caddo County, and it was through mistake that such mortgage was not excepted in the deed and payment thereof assumed by defendant as she had agreed to do in writing. The reply also contained the alternative allegation that the parties purposely intended to omit excepting the vendor's lien from the deed.

Plaintiff's brief on appeal states that "There was but one question in the trial of this case, namely, did defendant know of the $5000.00 vendor's lien, or mortgage, upon the property and did she purchase the property subject thereto?"

■■ We recognize generally that actual knowledge of an unrecorded mortgage acts as though the mortgage had been duly

recorded. Also, generally, that the holder of a valid mortgage cannot be deprived of his security by any act to which he is not a party. These general rules, however, are inapplicable in the present case for the reason that the same defenses that defendant would have had against Gurley, plaintiff's mother, if Gurley had been assigned the vendor's lien and brought the action, are available against plaintiff as will be hereinafter shown.

At the trial plaintiff introduced the note and mortgage, testified that he was the owner and holder thereof and that no part of the note had been paid. Cross-examination of plaintiff disclosed, however, that long after the note and mortgage fell due, and after Mrs. Bearden had instituted an action on the note in Stephens County, Oklahoma, against Mrs. Gurley, maker thereof, plaintiff had acquired an assignment of the note and mortgage from Mrs. Bearden. Questioned as to consideration and as to whom plaintiff had paid anything of value for the note and mortgage, plaintiff at first said that he paid Mrs. Bearden but qualified his statement by saying that an attorney in Duncan, Oklahoma, took care of it. His answers to further questions tended to support defendant's contentions that no consideration had been given by plaintiff. In fact, he practically admitted that he was his mother's, Mrs. Gurley's, alter ego, that is to say, that although he was the assignee of the vendor's lien, it was in his name only as his mother was instrumental in obtaining the assignment and the assignment was in fact for her benefit and not for the benefit of himself. We quote from the record some of Davis' testimony, as follows, to-wit:

"Q: You yourself paid the $5000.00, is that right?

A: The attorney took care of the deal, yes, sir.

Q: What did your $5000.00 consist of? Money, check or what?

A: Check.

Q: A check that you made?

A: Well, the attorney took care of that.

Q: I mean did you write a check on yourself is what I am getting at?

A: No, sir. I wrote it on the bank.

Q: You wrote it on the bank? The bank took care of it.

Q: On your account, or did you have a cashier's check? That is what I mean, what I am trying to find out.

A: Mother and I was making—when I was taking this from mother Mr. Sullivan took care of all that and he had power to take care of it at the bank.

Q: I am not trying to mix you up. All I want to know is how did you pay this? Did you pay the money yourself, or not?

A: Mr. Sullivan took care of that.

Q: Then you yourself did not pay the money yourself; you authorized someone else to do it, is that right?

A: Yes, sir.

\* \* \* \* \* \*

Q: Didn't your mother pay this?

A: No, sir.

\* \* \* \* \* \*

Q: And you signed nothing then?

A: That's right, sir.

Q: With reference to getting the money?

A: That's right.

\* \* \* \* \* \*

Q: Isn't it a fact that you and your mother went together and paid this note? You borrowed the money and you both signed a note, and borrowed the money? Is that true?

A: She helped me get the money, but she didn't sign no note on it, the way I understand it."

■ There can be little doubt that if plaintiff had, for a valuable consideration, acquired the note and mortgage before maturity a presumption that he was a holder in due course would operate favor-

ably to him as to the burden of proof. 48 O.S. 1961, § 129. But the same section contains the rule that shifts to the holder of the instrument whose title is defective the burden of overcoming a defense good as made against the party in whose behalf and in the capacity as the agent of whom the jury would have been warranted in finding he purchased the note and mortgage. Defendant may prevail by showing that the plaintiff acquired title with notice of facts which constituted fraud or with knowledge of other facts which rendered the title defective. In Wallace v. First National Bank of Kingston, Tenn., 167 Okl. 563, 31 P.2d 135, 136, this court said that want of consideration would be sufficient to show an infirmity or defect in the title of the payee and to cast the burden on the holder to prove that it obtained the instrument in due course. In the case on appeal here plaintiff's testimony was, in part, favorable to defendant as to lack of consideration for the acquisition of the note and mortgage, after default thereof, and as to plaintiff's knowledge of facts rebutting innocent purchasing of the instruments.

 In analyzing plaintiff's statement as to the actual issue involved in this appeal, that is, as to whether defendant knew of the $5000.00 vendor's lien or mortgage upon the property and whether she purchased the property subject thereto and the circumstances surrounding the assignment of the note and mortgage to the plaintiff and his testimony as to who paid the consideration for said assignment and the manner in which the parties presented and tried this cause in the trial court, we can only conclude that plaintiff recognizes and admits that any defenses that could be interposed by defendant against Mrs. Gurley could also be interposed against the plaintiff, her son. And we so hold.

 We adhere to the rule that, absent fraud or mutual mistake, a deed which is executed, delivered and accepted merges all previous negotiations and constitutes the complete and final agreement of the parties relative thereto. Wallace v. Smith, 205 Okl. 557, 240 P.2d 799; Strouhal v. Allied Development Co., 10 Cir., 220 F.2d 541. The result in the Wallace case, supra, was predicated upon the rule stated in 55 Am. Jur., Vendor & Purchaser, Sec. 327. Such rule establishes that, absent fraud or mistake, and absent contractual provisions not intended to be merged in the deed acceptance of a deed executed in performance of an agreement to convey, merges the written or oral negotiations and modifies the agreement to convey in accordance with the provisions of such deed. See Wallace v. Smith, supra, 240 P.2d p. 803, wherein other cases applying the rule are cited. And see Cridland et al. v. Franklin et ux., 191 Okl. 650, 132 P.2d 323, as to parol evidence bearing upon mistake in a deed.

Our conclusion is not in conflict with Edens et al. v. Miller, Okl., 315 P.2d 954, cited by plaintiff. Therein we held that execution of a deed was merely part performance of the contract. However, examination of the Edens case discloses the contract involved contained an enumerated special condition, and such contract was closed and the consideration paid upon this basis. The doctrine of merger was held inapplicable under the circumstances. A different situation is involved in the present case, making the cases distinguishable.

The ultimate question involves the correctness of the trial court's action in sustaining plaintiff's demurrer to the evidence and motion for directed verdict. The issues raised by the pleadings have been mentioned hereinabove. They involved the questions of whether the parties did or did not intend the provisions of the sale contract relative to the real estate mortgage to be merged into the deed, and, if they did so intend, whether the failure to insert in the deed an exception of the mortgage based upon the vendor's lien occurred by mistake.

In that connection we note that defendant testified that after the parties gave the attorney directions to prepare the instruments aforementioned she learned that

Mrs. Gurley had not been responsible for putting a small building on the property, as she had represented, and that Mrs. Gurley had expended an appreciably smaller sum than she represented with reference to air-conditioners; that she advised Mrs. Gurley that there wasn't going to be any sale and purchase of the motel; that Mrs. Gurley then agreed to pay the Bearden mortgage, or "vendor's lien".

We further note that defendant offered the testimony of a Mr. Wilson that between the time of the preparation of the aforementioned instruments and the signing of them, on about the 1st or 2nd day of November, 1960, during a conference Mrs. Gurley and Mrs. Lively had with him in which he, as holder of a prior mortgage on the motel, was advised of such parties' intentions, Mrs. Gurley stated that she was to pay the $5000.00 due Mrs. Bearden. This latter testimony was erroneously excluded.

Because this case must be retried, we purposely avoid further particularization of the evidence relative to Mrs. Lively's alleged defenses. The unvarying rule in a case of legal cognizance is that where there is any conflicting evidence, determination of the issues must be left for the jury. Likewise, it is settled that in passing upon a demurrer to the evidence and motion for directed verdict, the trial court must assume that defendant's evidence and all inferences reasonably deducible therefrom should be considered as true, and all conflicting evidence favorable to the movant should be disregarded. Shadid et al. v. American Druggist Fire Ins. Co., Okl., 386 P.2d 311, Syllabus 1, states the rule thus:

"For the purpose of a motion by plaintiff for directed verdict it must be assumed that defendant's evidence is true, and the trial court should not direct a verdict where it is necessary to weigh the evidence to determine where the preponderance lies; to do so constitutes reversible error."

A demurrer to the evidence admits every fact which the evidence, in the slightest degree, tends to prove, and all inferences and conclusions which can be reasonably and logically drawn therefrom, and where there is any conflict in the plaintiff's evidence that would make any part of it unfavorable to plaintiff or sustain the defense an issue of fact is presented. We hold that the evidence was sufficient to withstand the demurrer.

Reversed and remanded with directions to grant a new trial.

HALLEY, C. J., and DAVISON, BLACKBIRD, IRWIN and BERRY, JJ., concur.

JACKSON, V. C. J., concurs specially.

LAVENDER, J., concurs in result.

JACKSON, Vice Chief Justice (concurring specially).

It seems to me that the decisive question in this case is whether the plaintiff, Davis, was the owner of the note and mortgage upon which he brought suit. Under his testimony in cross examination I am of the view that there is evidence from which a jury might have concluded that he was not the owner of the note and mortgage.

In Davis' petition he alleged he was the owner of the note and mortgage. Defendant, in answer, filed a verified general denial but did not specifically and affirmatively allege that the plaintiff was not the real party in interest. White v. Wasson, 118 Okl. 29, 246 P. 445; Panther Oil & Gas Co. v. Brown, 170 Okl. 210, 39 P.2d 150. However, the case was tried as though the ownership of the note and mortgage was an issue in the case with the burden of proof falling upon the plaintiff. Since the mortgage had not been recorded plaintiff had the burden of proving that Mrs. Lively bought the property with actual knowledge of the note and mortgage.

Before discussing the evidence I think my views may be better understood if I

consider "issues" which I do not believe are rightfully involved in this case.

All agree that Mrs. Bearden was the owner of this property. All agree that when she sold this property to Mrs. Gurley that Mrs. Gurley signed a $5,000.00 note and mortgage in favor of Mrs. Bearden. There is rather conclusive testimony that Mrs. Lively saw this note and mortgage while it was in escrow in a Duncan, Oklahoma, bank and it was mentioned as a "vendor's lien" in the contract of sale between Gurley and Lively. Indeed Mrs. Lively attempted to prove during the trial that she did know of the note and mortgage but that Mrs. Gurley agreed to pay it. She asserts in her brief that she entered into a "new agreement" to buy the property "upon the promise of Gurley to pay Bearden".

From the foregoing it is clear that if Mrs. Bearden had retained the note and mortgage and brought this action in rem against this property she would have been entitled to judgment. She allegedly assigned this note and mortgage to Davis after maturity and thus not being a holder in due course, 48 O.S.1961, Sec. 122, Davis took the note and mortgage subject to any defenses that would have been available against Mrs. Bearden. Since Mrs. Lively bought the motel with prior knowledge of the note and mortgage held by Mrs. Bearden she had no defenses against the note and mortgage even though Davis was not a holder in due course. In fact she does not contend that the note and mortgage were defective, but sought to prove that Mrs. Gurley agreed to pay it. Thus the validity of the note and mortgage is not an issue in this case.

If Davis did in fact buy this note and mortgage and was the sole owner of the note and mortgage he would be entitled to prevail in this case as a matter of law. The fact that Mrs. Gurley agreed with Mrs. Lively, if she did, that Mrs. Gurley would pay the note would not constitute a defense to the foreclosure action whether it was brought by Mrs. Bearden or Mr. Davis because both were admittedly strangers to that transaction. Furthermore, any testimony that Mrs. Gurley agreed with Mrs. Lively that she, Mrs. Gurley, would pay the note is, as to Davis, pure hearsay. Mrs. Gurley was not a party to this law suit and it follows that her agreement with Mrs. Lively, if any, to pay the note was not a proper issue in this case other than as a circumstance to show Mrs. Gurley was the purchaser of the note and mortgage from Mrs. Bearden. It also follows that the question of whether the Gurley-Lively contract of sale was merged in the Gurley-Lively Warranty Deed is immaterial.

This leaves only the question of whether Davis, by uncontradicted evidence, was the owner of the note and mortgage.

In direct testimony Davis testified that he was the owner of the note and mortgage and that no part of it had been paid. He introduced in evidence the note and mortgage and an assignment of the note and mortgage from Mrs. Bearden to himself.

Excerpts are quoted from his cross examination as follows:

"A. Mother and I was making—when I was taking this from mother Mr. Sullivan took care of all that and he had power to take care of it at the bank.

\* \* \* \* \* \*

"Q. Then you yourself did not pay the money yourself; you authorized someone else to do it, is that right? A. Yes, sir.

"A. \* \* \* The check is down there in the bank that I signed to pay Mrs. Bearden.

"Q. The check is in the bank?

"A. Yes, I didn't sign it. Mr. Sullivan took care of signature and everything. He has got power of attorney to.

"Q. Didn't your mother pay this?

"A. No, sir.

"A. This cancelled check is supposed to be in the bank down at Duncan.

"Q. And you signed nothing then?

"A. That's right, sir.

"Q. You didn't sign a thing. Mr. Sullivan, you say—so he is the one that made, that paid the amount or whatever it was, or he is the one that finally made the transaction and bought the note and mortgage, is that right?

"A. Yes, sir.

"Q. And you signed nothing for him to get the money:

"A. Yes, sir.

"A. Mr. Sullivan had the power of attorney to do it.

"Q. What does the power of attorney consist of?

"A. On this case it just consists of this business deal between me and mother and Mrs. Bearden.

"Q. Isn't it a fact that you and your mother went together and paid this note? You borrowed the money and you both signed a note, and borrowed the money? Is that true?

"A. She helped me get the money, but she didn't sign no note on it, the way I understand it.

"Q. Now, she helped you get the money down at the bank, and it was in payment of this same note and mortgage that these gentlemen are looking at now, was it?

"A. Yes, sir.

"Q. Were you helping your mother in this case too?

"A. No, sir. The reason I was in it was because of this suit, help her pay that $5,000."

I realize it is unfair to quote excerpts from a witness' testimony without quoting his testimony completely. However, it is not the function of the court to weigh the evidence in this case but to determine whether there was any evidence from which a jury could conclude that Mr. Davis was not the owner of the note and mortgage. If there was any evidence that Mr. Davis was not the owner of the note and mortgage then a jury question was presented. Mr. Sullivan, Mrs. Gurley, and bank officials did not testify in connection with the assignment of the $5000.00 note and mortgage to Mr. Davis, and from his testimony, standing alone, a jury might conclude that he was not the owner of the note and mortgage.