JOHNSON v. CSAA GENERAL INSURANCE CO.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:JOHNSON v. CSAA GENERAL INSURANCE CO.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 JOHNSON v. CSAA GENERAL INSURANCE CO.
2020 OK 110
Case Number: 118689
Decided: 12/15/2020
As Corrected: December 18, 2020
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 110, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 



TOKIKO JOHNSON, Plaintiff,
and
TRIPLE DIAMOND CONSTRUCTION LLC, Plaintiff/Appellant,
v.
CSAA GENERAL INSURANCE COMPANY, CSAA INSURANCE EXCHANGE, CSAA FIRE AND CASUALTY INSURANCE COMPANY d/b/a AAA FIRE & INSURANCE COMPANY, and AUTOMOBILE CLUB OF OKLAHOMA d/b/a AAA OKLAHOMA, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY

¶0 The owner of real property and a construction company filed an action in District Court against the insurer of the property and alleged related insurer entities. Defendants (insurer) filed a motion to dismiss or in the alternative motion for summary judgment, argued an insurance policy may not be assigned, and sought dismissal of the construction company as a party. The Honorable Cindy H. Truong, District Judge, granted the defendants' motion, and the construction company appealed. Defendants filed a motion for the Oklahoma Supreme Court to retain the appeal and the motion was granted. We hold a post-loss insured's assignment of a property insurance claim was an assignment of a chose in action, and not an assignment of the policy. Insurer's motion to dismiss the appeal is denied.

DISTRICT COURT ORDER REVERSED AND CAUSE REMANDED TO THE
DISTRICT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH
THE COURT'S OPINION; APPELLEES' MOTION TO DISMISS DENIED

Aaron Stiles, Austin Meyer, Downtown Legal Group, Norman, Oklahoma, for Plaintiff/Appellant.
Gerard F. Pignato, Matthew C. Kane, Ryan, Whaley, Coldrion, Jantzen, Peters & Webber PLLC, Oklahoma City, Oklahoma, for Defendants/Appellees.


EDMONDSON, J.
¶1 This case involves an insured assigning a post-loss property insurance claim to a construction company for the purpose of the company repairing her property after a storm. Insurer argued the insured property owner was required to obtain written consent from the insurer prior to making the assignment. We agree with a majority of courts stating an insured's post-loss assignment of a property insurance claim is an assignment of a chose in action and not an assignment of the insured's policy. We hold insured's assignment was not prohibited by either the insurance policy or 36 O.S. § 3624. We conclude the District Court's judgment was erroneous when it dismissed the construction company as a party because written consent for the assignment was not provided by insurer to the insured. We reverse the judgment of the District Court and remand for further proceedings. The insurer's motion to dismiss the appeal is denied.
¶ 2 Tokiko Johnson's real property was damaged in a storm and she filed a claim with her insurance company. Johnson also executed an assignment of her insurance claim for the purpose of repairing the property with the execution in favor of Triple Diamond Construction LLC (the construction company). An appraiser retained by the construction company determined storm damage to the property in the amount of $36,346.06. The insurer determined the amount of damage due to the storm was $21,725.36.
¶3 Johnson and the construction company brought an action against Johnson's insurer and alleged related entities which are "part of a reciprocal inter-insurance exchange which pools its business among insureds and 'exchange policies' within the AAA/CSAA Insurance Group of companies sharing premiums, expenses and losses" (insurer).[1] Plaintiffs' petition in its labeled "first cause of action - breach of contract" alleges damages in the amount of $14,620.70, not including interest, attorneys' fees, and costs. Plaintiffs' petition also contains allegations labeled "second cause of action--bad faith (Johnson Only)." This part of the petition alleges the insurance company did not timely and adequately investigate the insurance claim or timely name an appraiser to determine the storm damage. These allegations are combined with others alleging the insurer failed to act in good faith with respect to the insurance contract obligations.
¶4 Insurer filed a motion to dismiss or an alternative motion for summary judgment for the purpose of dismissing the construction company as a party. Insurer raised one argument: Johnson's policy and 36 O.S. § 3624 prohibit an assignment of the policy. The construction company's response argues the assignment was a post-loss assignment of an insurance claim and not an assignment of an insurance policy. Defendants replied (1) an insurance claim is part of an insurance policy and a policy may not be split into smaller pieces, and (2) a "bad faith claim" may not be assigned.
¶5 The District Court sustained insurer's motion. Johnson dismissed her claims without prejudice to re-filing and the construction company appealed. In response to a show cause order by this Court, the parties agree that nothing remains pending in the District Court. However, insurer argues the construction company may not appeal without Johnson as a party in the appeal and insurer requests dismissal of the appeal. Insurer's argument is based upon (1) characterizing an insurance claim on an insurance policy as a single legal claim which may not be split between Johnson and the construction company, and (2) identifying Johnson as a necessary and proper party for this appeal involving a legal claim against her policy.
¶ 6 The Court's show cause order requested the construction company to address Mann v. State Farm Mutual Automobile Insurance Company, 1983 OK 84, 669 P.2d 768. The construction company responded and argued Mann applies in an appeal from a judgment which resolves fewer than all of the issues in a case, and all issues have been resolved due to the combined effect of the trial court's order and Johnson's dismissal without prejudice. The construction company argued Mann does not apply for this reason.
¶7 Insurer responded to the show cause order and argued the construction company is appealing "only part of a [legal] claim" or part of a cause of action and one principle stated in Mann applies. Insurer's approval of Mann was limited to citing it for the proposition that a cause of action includes all theories of recovery or types of damages stemming from one occurrence or transaction.[2] Insurer argued an action for breach of an insurance contract is the same cause of action as one based upon an insurer's failure to perform the contract in good faith. Insurer's response requested dismissal of the appeal based upon the same argument it made in the trial court, i.e., Johnson's contractual rights created by the insurance agreement may not be assigned to the construction company. We address the request to dismiss the appeal after addressing the sole issue decided in the trial court and raised on appeal.
I. Standard of Review
¶8 The parties argued in the trial court a single question: May an insured assign a property insurance policy benefit to a third party without the consent of the insurer when (1) the policy requires insurer's consent for assignment of the policy, (2) a statute allows a policy to state it is or is not assignable, and (3) the insured's assignment relates to a previous covered loss to the insured's property? This issue was presented for adjudication by the insurer's motion to dismiss or alternative motion for summary judgment.
¶9 The appellate standard of review for an assignment of error is based upon the nature of the proceeding in District Court (e.g., law, equity, and types of administrative proceedings), nature of the trial court's decision (e.g., deciding an issue of law, fact, mixed law and fact), and the nature of the procedure used by the trial court (e.g., dismissal of a petition, summary judgment, judgment on a jury verdict), with the procedure linked to a particular judicial power and judicial discretion exercised by the trial court.[3] Generally, a legal question involving the District Court's statutory interpretation of law is subject to de novo appellate review.[4] Similarly, when the meaning assigned by the trial court to an insurance contract and its terms is based upon a legal conclusion, then the assignment of error on appeal presents a legal question and is reviewed using a de novo standard.[5]
 
¶10 The trial court decided insurer's motion to dismiss or in the alternative summary judgment. Insurer's motion relied on 12 O.S. § 2017(D)[6] in its reply to plaintiffs' response to a dismissal request, and insurer combined this authority with an argument stating a cause of action should not be split.[7] Insurer raised "failure to state a claim" in its previously filed answers, and in its motion to dismiss relied on one opinion for a difference between a motion raising 12 O.S. § 2012(B)(6) and a motion for summary judgment.[8] The construction company also relied on authority discussing review of an order deciding a 12 O.S. § 2012 (B)(6) dismissal for failure to state a claim.[9] The parties do not identify in their filings either an additional § 2012 ground for dismissal or an issue of fact adjudicated by the District Court.
 
¶11 The trial court adjudicated the meaning of the language in both 36 O.S. § 3624 and insured's policy as issues of law. De novo appellate review is used for issues of law arising from both § 2012(B)(6) motion to dismiss and summary judgment adjudications.[10] Review of both these types of adjudications involves an appellate court's exercise of a plenary, independent, and non-deferential reexamination of the trial court's rulings on issues of law.[11] We use de novo appellate review for appellant's assignments of error challenging the correctness of the District Court's judgment.
II. Insured's Assignment
¶12 Generally, when an insurance policy is deemed to be a personal contract between insured and insurer, a policy provision requiring insurer's consent for an assignment will be enforced. However, this Court has noted exceptions to this general rule. For example, in American Alliance Ins. Co. of N. Y. v. McCallie, 1957 OK 312, 319 P.2d 295, we noted an exception occurs when the subject of the assignment is not the policy and its coverage, but a right to receive funds for a policy-covered loss and the assignment occurs after the loss. We stated the following.
It seems to be the rule, followed by most courts, that where such a policy is in force and effect at the time the insured property burns, by the happening of the latter event, the relationship between the insurer and the insured becomes simply that of debtor and creditor; and that the chose in action, which the latter then has against the former, may be validly transferred to a third person, by assignment, without compliance with the policy's requirement that the insurer's consent thereto (by endorsement or otherwise) be obtained.
American Alliance Ins. Co. of N. Y. v. McCallie, 319 P.2d at 298 (relying on court opinions from Wisconsin and Iowa, cases cited in Annotations at 122 A.L.R. 144, 56 A.L.R. 139, and the then current 45 C.J.S. Insurance, 29 Am.Jur. Insurance, and 5 Appleman, Insurance Law and Practice, § 3458).
The phrase "chose in action" was used in common law and has modern applications which include an assignable legal right.[12] The phrase may be used when describing a type of property in 60 O.S.2011 § 312: "A thing in action is a right to recover money or other personal property, by judicial proceedings."[13] Generally, 60 O.S. 2011 § 313 makes a "thing in action" assignable.[14] This concept of a post-loss policy-covered assignment of a chose in action was not new when we addressed it in American Alliance. For example, in 1880 the Supreme Court of Wisconsin made the following observation.
. . . although the policy provides that an assignment thereof, without the consent of the company, will avoid the contract, yet the law is well settled that this only applies to an assignment before a loss under it. After a loss, the claim, like any other chose in action, may be assigned without affecting the insurer's liability. May on Ins. 468; Wood on Ins. 189. Says Mr. Wood on this point: "The contract, while the risk is active, is personal, and the parties contract in reference to the delectus personae of each other; therefore, the obligation cannot be changed without the insurer's consent. But, when liability actually attaches under the policy, the entire relation is changed, and the relation of insurer and insured is changed to that of debtor and creditor, and the delectus personae of the contract is no longer material."
Dogge v. Northwestern Nat. Ins. Co., 49 Wis. 501, 5 N.W. 889, 889-890 (1880).
The Wisconsin court was not alone when asserting this rule in 1880. The Supreme Court of Michigan also recognized this concept as an important public policy in 1880.
The provision of the policy forfeiting it for an assignment without the company's consent is invalid, so far as it applies to the transfer of an accrued cause of action. It is the absolute right of every person--secured in this state by statute--to assign such claims, and such a right cannot be thus prevented. It cannot concern the debtor, and it is against public policy.
Roger Williams Ins. Co. v. Carrington, 43 Mich. 252, 5 N.W. 303, 304 (1880).
By 1917 the Florida Supreme Court described the rule allowing an insured's assignment of post-loss contractual rights without an insurer's consent as a matter which was "well-settled" in law.[15] The Florida court relied on an opinion from Georgia which in turn cited Joyce on Insurance, Roger Williams Ins. Co., and opinions from Wisconsin, New York, and Pennsylvania.[16] Legal hornbooks of that day also recognized the principle.[17]
 
¶ 13 In American Alliance we noted this post-loss exception to a policy-required insurer's consent did not apply because: (1) The insured had transferred ownership of the insured property to the new owner prior to the loss and the insured/assignor "had no insurable interest in the property" at the time of loss; and (2) "It is elementary that a fire insurance policy was a personal contract with the party insured," and the insurance policy did not pass to the purchaser of the property without the policy-required insurer's consent to the assignment.[18] In other words, the insured could not assign insurance coverage to a new owner of the property, and an attempt to assign coverage was an attempt to assign the policy.
 
¶14 In 1963 and few years after American Alliance we again noted the distinction between assignment of a chose in action and one to create insurance coverage.[19] We commented on what the property owners had been required to show in the trial court relating to an assignment of a "matured claim" which had "ripened" into a "chose in action."
The cases plaintiffs cite in support of their argument that Mrs. Wythe's assignment was effective, even though the subject of the insurance had already been destroyed, concern situations in which those insured under the policies involved, had insurable interests, or valid claims that had already matured at the time of their assignments, in which situations the subject of the assignments were choses in action against the insurors. If, on the date of Mrs. Wythe's purported assignment, there had been anything in being, upon which the assignment, or the policies, could have operated, or to which either could have applied--that is, either the property, or a chose in action growing out of the loss thereof--then there might be a basis for the position that said assignment transferred some right to plaintiffs. As we have seen, however, when the assignment was belatedly executed on December 21, 1960, the ostensible assignor, Mrs. Wythe, could neither claim any loss from the fire, nor assert that, by reason of the fire, any such claim had matured, or ripened, into a chose in action in her--nor was the property--the subject of the insurance coverage--any longer in existence.
Shadid v. American Druggist Fire Ins. Co., 1963 OK 146, 386 P.2d 311, 314-315.
We noted a difference between (1) an insured possessing an insurable interest and valid insurance claim matured at the time of assignment when the subject of the assignment was a policy-created chose in action after a policy-covered loss, and (2) a person possessing no insurable interest and no policy-created chose in action and who attempts to create personal insurance coverage without a policy-required consent of insurer.[20]
 
¶15 Our explanation in Shadid relied upon reasoning we cited in American Alliance relating to a matured claim assignable as a "chose in action." Shadid occurred in the context of a fire insurance policy, property loss due to fire, and whether an assignment was proper. Oklahoma's standard fire insurance policy both before and after the then recent 1957 Insurance Code has continued to provide: "Assignment of this policy shall not be valid except with the written consent of this Company."[21] This was the language in the policy quoted by the Court in Shadid.[22] Shadid occurred in the context of a statutory form for a fire insurance policy stating an assignment required insurer's consent.
 
¶16 Many courts since 1957-1963 have agreed with the rule stated in American Alliance and Shadid, and a majority have continued to state a post-loss assignment by the insured of a chose in action is one exception to an insurer's policy-required consent for assignment. For example, one legal encyclopedia states: "Moreover, the majority rule is that a provision that requires the insurer's consent to an assignment of an insurance policy is void as applied to an assignment made after a loss covered by the policy has occurred."[23] This division of majority and minority views was recently discussed by the United States Court of Appeals for the Fifth Circuit when applying the law of Texas, and the court observed the following.
According to Couch on Insurance, "the great majority of courts adhere to the rule that general stipulations in policies prohibiting assignments thereof except with the consent of the insurer apply only to assignments before loss, and do not prevent an assignment after loss." These courts reason that "[t]he purpose of a no assignment clause is to protect the insurer from increased liability, and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity."
Keller Foundations, Inc. v. Wausau Underwriters Ins. Co., 626 F.3d 871, 874 (5th Cir. 2010) (quoting 3 Couch on Insurance § 35:7 (Westlaw 2010) and collecting various cases), (notes omitted).
Courts adopting the majority position have relied on a long-recognized public policy against restraints on assigning a chose in action, and they have stated this policy supersedes or outweighs a public policy favoring contractual freedom to create such a restraint in a contract of insurance. For example, the Supreme Court of New Jersey recently stated the following.
The majority rule is an exception to the general principle that parties to a contract may freely limit assignment of their contractual rights. The principle underlying the rule is a deeply rooted public policy against allowing restraints on alienation of choses in action. See Bolz v. State Farm Mut. Auto. Ins. Co., 274 Kan. 420, 52 P.3d 898, 904, 908 (2002) (adopting majority rule and rejecting insurer's position "that the public policy in favor of freedom of contract is superior to the public policy in favor of free assignment of choses of action"); Wehr Constructors, Inc. v. Assurance Co. of Am., 384 S.W.3d 680, 688 (Ky. 2012) (finding majority rule "fully consistent with [Kentucky's] prior holdings adverse to contractual provisions tending to restrain the alienability of choses in action"). New Jersey similarly recognizes choses in action as personal property and disfavors any attempt to restrict alienation of that property. Morris v. Glaser, 106 N.J. Eq. 585, 610, 151 A. 766 (Ch. 1930) ("[A] chose in action has almost time out of mind been assignable."), aff'd, 110 N.J. Eq. 661, 160 A. 578 (E. & A. 1932); see also N.J.S.A. 1:1--2 (including choses in action in statutory definition of "personal property").
Givaudan Fragrances Corp. v. Aetna Cas. & Sur. Co., 227 N.J. 322, 151 A.3d 576, 586--587 (2017).
These courts echo our observations in both American Alliance and Shadid by explaining a difference between assignment of a policy and a chose in action.
The principle on which the courts hold that an assignment of a right under a policy prohibiting assignment may be made is that such an assignment is not the assignment of the policy itself (because the parties have contracted otherwise), but it is the assignment of a claim, or debt, or chose in action. The rule is stated in 2 May on Insurance, § 386, as follows: "An assignment after loss is not the assignment of the policy, but the assignment of a claim or debt--a chose in action. *** An assignment after loss does not violate the clause in the policy forbidding a transfer even if the clause reads before or after loss. The reason of the restriction is, that the company might be willing to write a risk for one person of known habits and character and not for another person of less integrity and prudence, but after loss this reason no longer exists."
Givaudan Fragrances Corp., 151 A.3d at 588, quoting Ocean Accident & Guar. Corp. Ltd. v. Sw. Bell Tel. Co., 122 A.L.R. 133, 100 F.2d 441, 446 (8th Cir.), cert. denied, 306 U.S. 658, 59 S.Ct. 775, 83 L.Ed. 1056 (1939).
Distinguishing between an assignment of an insurance policy and an assignment of a post-loss chose in action which does not increase an insurer's risk has continued to be recognized by a majority of courts in the United States as implementing an important public policy.[24]
 
¶17 We have explained contractual rights are presumed to be assignable, but parties may expressly provide otherwise.[25] We observed that contractual language concerning assignment has been examined by courts to determine (1) if the language is clear and unambiguous, (2) the parties' intent, (3) if the language eliminates both the power and the right to assign, (4) the nature of any harm to the party obligated to perform by the mere assignment, (5) the nature of the benefit created by the assignment, (6) the public policy considerations applicable to the particular contract and (7) assignability of contractual rights.[26]
 
¶18 The insurer in our case focuses on public policy considerations by relying on 36 O.S. 2011 § 3624 as an expression of public policy,[27] and argues this statutory public policy should be enforced by recognizing a limit on Johnson's ability to create an assignment of a chose in action. Section 3624 states as follows.
 
Except as provided in subsection D of Section 6055 of this title, a policy may be assignable or not assignable, as provided by its terms. Subject to its terms relating to assignability, any life or accident and health policy, whether heretofore or hereafter issued, under the terms of which the beneficiary may be changed upon the sole request of the insured, may be assigned either by pledge or transfer of title, by an assignment executed by the insured alone and delivered to the insurer, whether or not the pledgee or assignee is the insurer. Any such assignment shall entitle the insurer to deal with the assignee as the owner or pledgee of the policy in accordance with the terms of the assignment, until the insurer has received at its home office written notice of termination of the assignment or pledge, or written notice by or on behalf of some other person claiming some interest in the policy in conflict with the assignment.
36 O.S.2011 § 3624 (emphasis added).
Johnson's policy contains similar language: "Assignment of this policy will not be valid unless we give our written consent."[28] The statutory language relied on by insurer expressly states "a policy may be assignable or not assignable, as provided by its terms." The policy itself states assignment of "this policy" requires written consent. The issue is whether the statutory language expressing a public policy relating to an assignment of an insurance "policy" includes a post-loss assignment of a chose in action when the insurance policy restricts an assignment of "this policy."
¶19 A primary goal when reviewing a statute is to ascertain legislative intent, if possible, from a reading of the statutory language and its plain and ordinary meaning.[29] This is so because the plain words of a statute are deemed to express legislative authorial intent in the absence of any ambiguity or conflict in language.[30] We have explained the plain meaning of statutory language is conclusive, except in a rare case when literal construction produces a result which is demonstrably at odds with legislative intent.[31] When a provision of an insurance policy and a statute relate to the same insurance principle we read the policy in light of the statute.[32] In the present case where the statute refers to the parties' agreement in the policy, we examine the policy to give effect to the ordinary meaning of the words in the policy.[33]
 
¶20 We first look at the plain words used in the statute. Our parties agree Johnson's policy is subject to section 3624's language that "a policy may be assignable or not assignable, as provided by its terms."[34] They disagree whether "policy" includes a chose in action. The plain language of the statute states the object which is made assignable or not is a "policy." The term "policy" in the context of an insurance policy usually refers to a type of contract, certificate, or document stating the existence or coverage of insurance for certain purposes.[35] Generally, courts construe terms in an insurance policy consistent with insurance statutes on the same subject.[36] We consider the term "policy" in the contexts provided by both the statute and an insurance contract or agreement.
 
¶21 We have explained the nature of an insurance policy as a type of contract, a contract of adhesion.[37] Historically, the term "policy" referred to a completed contract of insurance usually evidenced by a formal written instrument named a "policy."[38] Also historically, this contract usually contained certain elements (either determining or subject to being made determinable), including the subject of the insurance, the rate of premium, extent of insurance as to time and risks assumed, amount of insurance underwritten, additional terms essential for the circumstance, and with no conditions considered to be precedent for the creation of the contract remaining to be fulfilled.[39] Generally, insurance is "a conditional contract, whereby one party undertakes to indemnify another against loss, damage, or liability arising from some specified but contingent event."[40]
 
¶22 Section 3624 was created as part of the then new Insurance Code in 1957 and section 3624 was codified in Title 36, Article 36, containing general provisions for many insurance contracts.[41] Similar language involving fire insurance contracts had existed in our insurance statutes both before and after the 1957 Code. This continued use of statutory language concerning assignment of a "policy" occurred forty years after the Florida Supreme Court had observed a then well-settled legal principle distinguishing assignment of a policy and a post-loss chose in action.[42] This Florida Supreme Court opinion was not unfamiliar to members of the Oklahoma Bar in 1957, and it had been relied upon by this Court in 1929 and twice in 1935 when explaining a garnishment principle.[43] Further, the Florida Supreme Court relied upon an opinion from Georgia which in turn relied on an 1881 court opinion from Wisconsin, the same Wisconsin opinion we cited in American Alliance when explaining the chose-in-action exception for an assignment related to an insurance policy.[44] A few months after section 3624 became effective in 1957 this Court's opinion in American Alliance, supra, noted the general rule allowing assignment of a chose in action by an insured after a policy-covered loss had occurred.
 
¶23 Insurer's position is essentially this: When the legislators created 3624 in 1957 they selected the term "policy" to have a meaning in scope so as to include a chose in action. In summary, insurer contends the Legislature created a statutory meaning for "policy" that was contrary to a "well-settled" legal principle used by courts in other states construing insurance contracts for the then previous 75 years. The area of insurance contracts is one in which the Legislature has the power to decide public policy,[45] but insurer's argument does not show that the Oklahoma Legislature decided on a different definition for an insurance "policy" in 1957 for section 3624.
¶24 As noted herein in our discussion of Shadid, the statutory form for a fire insurance policy contained language relating to an assignment similar to section 3624. The uniform statutory form for fire insurance used in several States expressed a legislative intent in this and other States to not change the meaning and effect of common insurance terms which had become well-settled; but "to combine these terms in a standard policy for the sake of uniformity,"[46] and for courts to construe an insurance policy by the usual rules of construction applied to an insurance contract although the policy was based upon a statutory form.[47]
 
¶25 No Oklahoma insurance statute or Oklahoma authority is cited by insurer for making the term "policy" to be broad enough in scope to include Johnson's assignment of a post-loss chose in action.[48] Insurer points to no language in Johnson's policy defining the term "policy" as including an assignment of a chose in action.[49] Insurer argued an insured may not split a "policy" into smaller pieces and then classify a piece as a "claim" for the purpose of an assignment, because a "policy" may not be assigned.[50] Insurer equates the meaning of "policy" with a "chose in action" when the latter is based on a policy-created obligation. Insurer's argument injects ambiguity into the meaning of the term "policy" by arguing for a definition of "policy" not found in (1) an insurance statute, or (2) the historical and ordinary meaning of the term which distinguishes a "policy" and a "chose in action," or (3) a policy-defined meaning for "policy" in this appeal. The language "assignment of this policy" in Johnson's policy is not ambiguous; but insurer's argument would create an ambiguity and it would not ultimately support insurer's argument against an assignment since ambiguity would be resolved against the insurer.[51]
 
¶26 We construe the meaning and effect of a common insurance term in § 3624, a "policy," using its well-settled meaning at both the time § 3624 was created in 1957 and used today in Johnson's policy of property insurance. We agree with the majority of courts allowing an assignment by an insured possessing an insurable interest when the subject of the assignment is a post-loss chose in action based upon property insurance. We conclude the District Court's judgment dismissing the construction company as a party must be reversed.
 
III. Insurer's Split-Claim Theory
¶27 Insurer argues the appeal should be dismissed because Johnson impermissibly split her "contract" claim" from her "tort claim." Insurer further argues a "tort claim" or tort chose in action may not be assigned, and because of this principle the construction company is not a proper party and Johnson is the proper and necessary party for an appeal.
¶28 Insurer's response to the Court's order on the issue of Mann has attached photocopies. They include (1) a letter from the Oklahoma Insurance Department to a person, not a party, and who acted as a public adjuster, (2) a request from this person to the State Insurance Commissioner for a hearing, (3) two pages selected from a deposition involving this person, and (4) a District Court petition naming this person and the Oklahoma Insurance Commissioner as parties. Nothing before us suggests these documents were either before the trial court when it decided insurer's motion to dismiss or demonstrate the Court's incapacity to administer complete relief in this appeal.
¶29 This court may not consider as part of an appellate record any instrument or material which has not been (1) incorporated into the assembled record by a certificate of the clerk of the trial court, or (2) allowed by a rule of appellate procedure for reviewing certain dismissals and summary judgment.[52] A deficient record may not be supplemented by material physically attached to a party's appellate brief.[53] Exceptions to these principles may include an admission of fact made in a brief, and facts occurring during the pendency of an appeal that adversely affect a court's capacity to administer effective relief, such as when a controversy has become moot during an appeal and facts presented with affidavit by counsel of record.[54] The extra-record documents presented by insurer herein are not supported with an affidavit by counsel of record.[55] These documents are not considered by the Court when reviewing insurer's response.
¶30 In Mann v. State Farm Mutual Automobile Insurance Company,[56] we observed "the general rule that an appeal will not lie from the trial court's determination of breach of an insurance contract when the rest of the cause of action has not yet been tried."[57] We then observed "the general rule is not applicable" where the trial court adjudicated liability and damages on the insurance contract claim against the insurer, insurer appealed, and "the issue of tortious breach" remained pending in the trial court.[58] We allowed the appeal to adjudicate the issues as a final order apart from the tortious breach claim remaining in the trial court. Neither insurer nor the construction company has made any argument stating this part of Mann should be overruled or modified in the appeal before us.
¶31 Insurer argues as part of its dismissal request: (1) 12 O.S. § 2017 states assignment of claims not arising out of contract is prohibited; (2) A "bad faith" clam against an insurer is a tort; and (3) Johnson's bad faith claim may not be assigned or split because of § 2017 and a bad faith claim as a tort. The Oklahoma Court of Appeals has recently observed it "has held that claims arising out of a breach of contract are freely assignable."[59] In one of these opinions, Chimney Rock Ltd. Partnership v. Hongkong Bank of Canada,[60] the court distinguished "a pure tort" which may not be assigned and a tort arising out of contract which may be assigned.[61] Chimney Rock relied on Judge Murrah's opinion in Momand v. Twentieth Century Fox Film Corp., 37 F.Supp. 649 (W.D.Okl.1941),[62] which explained the non-assignability of a tort occurs when the tort is a wrong against a person, as opposed to wrong which affected "the business or property of the assignor and it was, therefore, not ex delicto and came within the exception of the general rule forbidding the assignment of a thing in action, arising out of a tort."[63]
 
¶32 Insurer invites the Court to examine the tort of an implied-in-law duty of good faith and fair dealing arising from an alleged breach of the contractually-based relationship owed by an insurer to its insured in the context of opinions by the Court of Civil Appeals cited by insurer. Insurer also relies upon a legal encyclopedia which includes jurisprudence from other jurisdictions, and insurer necessarily invites our review of the assignability of claims in these jurisdictions, principles in the common law, the relation between assignability and survivability of a claim, and a comparison with Oklahoma jurisprudence.[64] Insurer essentially asks the Court to review our jurisprudence and determine whether the alleged tort herein should be classified as "pure tort" or a "tort arising out of contract" for purpose of an insured's assignment of a property insurance chose in action against her insurer, and (2) adjudicate the meaning and effect of Johnson's assignment on the contract and tort theories of recovery pled in the District Court. Insurer also relies upon a Court of Civil Appeals' opinion for its argument that the "contract claim" and the "bad-faith claim" are one cause of action.[65]
 
¶33 The District Court did not adjudicate these issues, and in an appeal we do not make first instance determinations of disputed non-jurisdictional law issues.[66] The present appeal is limited to the meaning of an insured's post-loss property insurance assignment of a claim against the policy as it relates to 36 O.S. § 3624 and a phrase in the insured's property insurance policy. This issue was adjudicated by the trial court. We also may not adjudicate insurer's request for the Court to construe the meaning of the assignment in a broader context because an issue on appeal will not be decided when unsupported by an appellate record necessary for such review,[67] and the assignment itself is not a part of the record on appeal. Further, insurer asks us to adjudicate whether Johnson intended to assign a tort claim to the construction company because the meaning of an assignment is usually based upon the intent of the parties.[68] This issue was not adjudicated in the trial court. We decline to address these issues raised by insurer when they are unsupported by an appellate record, not preserved by the parties for appellate review, and not adjudicated by the trial court.[69] Insurer's motion to dismiss the appeal is denied.
 
IV. Conclusion
¶34 An insured possessing an insurable interest may assign a post-loss chose in action based upon a claim against a property insurance policy without violating an insurance policy clause requiring written consent of the insurer for assignment of the policy. Insurer's motion to dismiss the appeal is denied. The District Court's judgment is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.
¶35 CONCUR: GURICH, C.J.; DARBY, V.C.J.; KAUGER, WINCHESTER, EDMONDSON, COLBERT, COMBS, and ROWE, JJ.


¶36 CONCUR IN PART AND DISSENT IN PART: KANE, J., I concur in the holding that a post-loss insurance contract right is assignable as a chose in action, but I dissent from the declination to rule upon the assignability of a bad faith chose in action, which I would hold as a matter of law is not assignable.

FOOTNOTES

[1] Record on Accelerated Appeal, Tab 1, Petition, May 16, 2019, pg. 2 ¶ 7.

[2] Mann, 1983 OK 84, 669 P.2d at 772, citing Retherford v. Halliburton Company, 1977 OK 178, 572 P.2d 966.

[3] I.T.K. v. Mounds Public Schools, 2019 OK 59, n. 12, & ¶¶ 11-12, 451 P.3d 125, 131; Christian v. Gray, 2003 OK 10, ¶ ¶ 40-47, 65 P.3d 591, 608-610 (review of issues of law and fact); Laubenstein v. Bode Tower, L.L.C., 2016 OK 118, ¶ 9, 392 P.3d 706, 709 (equity order is sustained unless found to be against the clear weight of the evidence or is contrary to law or established principles of equity). Compare, City of Tulsa v. State. of Oklahoma, ex rel. Public Employees Relations Bd., 1998 OK 92, ¶ 12, 967 P.2d 1214, 1219 (Administrative Procedure Act appeal uses same statutory review in District Court, Court of Civil Appeals, and Supreme Court) with Weson v. Independent School District No. 35 of Cherokee County, 2007 OK 61, ¶ 16, 170 P.3d 539, 543 (District Court's appellate review of administrative order using a trial de novo and when the decision is reviewed by Court of Civil Appeals and Supreme Court they will not weigh evidence to determine preponderance, but determine if competent evidence supports the District Court's decision, or is clearly erroneous as a matter of law).

[4] McIntosh v. Watkins, 2019 OK 6, ¶4, 441 P.3d 1094, 1096, citing Fulsom v. Fulsom, 2003 OK 96, ¶ 2, 81 P.3d 652.

[5] May v. Mid--Century Insurance Company, 2006 OK 100, ¶ 22, n. 37, 151 P.3d 132, 140, citing American Economy Ins. Co. v. Bogdahn, 2004 OK 9, ¶ 11, 89 P.3d 1051; Bituminous Cas. Corp. v. Cowen Const., Inc., 2002 OK 34, ¶ 9, 55 P.3d 1030, 1032; Torres v. Sentry Ins., 1976 OK 195, ¶ 7, 558 P.2d 400; Wiley v. Travelers Ins. Co., 1974 OK 147, ¶ 16, 534 P.2d 1293; American Iron & Mach. Works Co., Inc. v. Insurance Co. of North America, 1962 OK 197, ¶ 5, 375 P.2d 873.
A meaning assigned by the trial court to an insurance contract and its terms may be based upon adjudication of an issue of fact in some circumstances. See, e.g., Hensley v. State Farm Fire and Casualty Co., 2017 OK 57, ¶¶ 37, 38, 398 P.3d 11, 23-24. (parties' intent relating to third party beneficiary status occurring in the context of a latent ambiguity claim required trier of fact to adjudicate the issue of fact presented by competing claims).

[6] 12 O.S.2011 § 2017(D):
D. ASSIGNMENT AND SUBROGATION OF CLAIMS. The assignment of claims not arising out of contract is prohibited. However, nothing in this section shall be construed to affect the law in this state as relates to the transfer of claims through subrogation.

[7] See 12 O.S.Ann. § 2017 (Thomson Reuters 2020) (Committee Note to Section 2017 Concerning Legislative Changes--Adoption of Code) (paragraph "D" codified to be consistent with Lowder v. Okla. Farm Bureau Mut. Ins. Co., 1967 OK 245, 436 P.2d 654, where insured and his subrogated insurer sought to recover damages arising from the same cause of action, Court held they could not split their claims into separate actions and directed the District Court to dismiss the petition on remand).

[8] Record on Accelerated Appeal, Tab 6, defendants' motion to dismiss, pg. 2, citing Tucker v. Cochran Firm-Criminal Defense Birmingham L.L.C., 2014 OK 112, 341 P.3d 673.

[9] Record on Accelerated Appeal, Tab 7, plaintiffs' response to defendants' motion to dismiss, pg. 2, citing A--Plus Janitorial & Carpet Cleaning v. Employers' Workers' Comp. Ass'n, 1997 OK 37, 936 P.2d 916, and Great Plains Fed. Sav. And Loan Ass'n v. Dabney, 1993 OK 4, 846 P.2d 1088.

[10] Farley v. City of Claremore, 2020 OK 30, ¶¶ 14-18, 465 P.3d 1213, 1223-1225; Independent School Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56, ¶ 17, 473 P.3d 475.

[11] Martin v. Gray, 2016 OK 114, ¶ 5, 385 P.3d 64, 66 (rule stated for a motion to dismiss); Payne v. Kerns, 2020 OK 31, ¶ 10, 467 P.3d 659, 663 (Whether summary judgment is properly entered is a question of law reviewed de novo; and in a de novo review the Court has plenary, independent and non-deferential authority to determine whether the trial court erred in its application of the law and whether there is any genuine issue of material fact.).

[12] ACCOSIF v. American States Ins. Co., 2000 OK 21, n. 4, 1 P.3d 987, 990. See Black's Law Dictionary, 305 (4th ed. 1951) (chose in action) (including within one definition of the phrase is "assignable rights of action ex contractu and perhaps ex delicto"); William Blackstone, 2 Commentaries, * 389, *396-397 (one type of property is a "thing" or "chose" held "in action" when it may be recovered "by suit or action at law"). Blackstone, Commentaries, 854, n. h (William D. Lewis, ed., 1922) (explaining same idea of thing or chose in action at Vol. 2, *397 in the civil law: "Rem in bonis nostris habere intelligimur, quotiens ad recuperandum eam actionem habeamus." ["We are supposed to have a property in our goods, whenever we can have action to recover them."]).

[13] ACCOSIF v. American States Ins. Co., 2000 OK 21, n. 4, 1 P.3d at 990, citing 60 O.S. 1991 § 312 and explaining a chose in action.

[14] 60 O.S. 2011 § 313: "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner. Upon the death of the owner, it passes to his personal representatives, except where, in the case provided by law, it passes to his devisees or successors in office."

[15] West Florida Grocery Co. v. Teutonia Fire Insurance Co., 74 Fla. 220, 77 So. 209, 210-211, L.R.A. 1918B, 968 (1917) ("it is a well-settled rule that the provision in a policy relative to the consent of the insurer to the transfer of an interest therein does not apply to an assignment after loss").

[16] West Florida relied on Georgia Fire Ass'n v. Borchardt, 123 Ga. 181, 51 S. E. 429, 430, 3 Ann. Cas. 472 (1905) ("It has been held, rightly we think, that a condition in a policy of fire insurance prohibiting an assignment or transfer of the same after loss, without the consent of the insurer, is null and void, as inconsistent with the covenant of indemnity and contrary to public policy."). Georgia Fire Ass'n relied on Joyce, Insurance, §§ 904, 2322; Roger Williams Ins. Co. v. Carrington, 43 Mich. 252, 5 N. W. 303 (1880); Alkan v. New Hampshire Ins. Co., 53 Wis. 136, 10 N. W. 91 (1881); Goit v. Ins. Co., 25 Barb. 189 (N.Y. 1855); Courtney v. Ins. Co., 28 Barb. 116 (N.Y. 1858); West Branch Ins. Co. v. Helfenstein, 40 Pa. 289, 80 Am. Dec. 573 (1861). Georgia Fire Ass'n, 51 S.E. at 430.

[17] See, e.g., William Reynolds Vance, Handbook on the Law of Insurance, pgs. 50--51 (West Pub. 1904) ("From the fact that the contract of fire insurance is peculiarly personal, the result follows that rights under it, so long as it remains executory, cannot be assigned by one party without the consent of the other. . . After the loss has been suffered, a right to demand money of the insurer has accrued, the insured may assign such claim as freely as any other money demand.") relying on Nease v. Insurance Co., 32 W. Va. 283, 9 S.E. 283. Vance also states assignment after loss is "a mere money claim" and an attempted restraint upon such an assignment would not be valid. Vance, Insurance, at pg. 468, relying on Alkan v. New Hampshire Insurance Co., 53 Wis. 136, 10 N.W. 91 (1881).

[18] American Alliance Ins. Co. of N. Y. v. McCallie, 319 P.2d at 298-299.

[19] Shadid v. American Druggist Fire Ins. Co., 1963 OK 146, 386 P.2d 311.

[20] Shadid v. American Druggist Fire Ins. Co., 386 P.2d at 314-315 (drug store insured by insurance policy was damaged by fire two months after sale of the store, former owner executed an assignment of insurance policy to new owners eighteen months after sale, evidence at trial was conflicting whether a policy-required insurer's consent had occurred, and Court affirmed judgment on a jury verdict for the insurer noting the distinction between an assignment of a chose in action and one to create insurance coverage).

[21] Prior to 1957 the Standard Fire Insurance Policy form at 36 O.S.1951 § 244.1 contained a clause on the first page of the policy which stated: "Assignment of this policy shall not be valid except with the written consent of this Company." 36 O.S.1951 at pg. 1529. Section 244.1 as part of Ch. 4, 36 O.S.1951, and was repealed in 1957 when the new Insurance Code was adopted. 1957 Okla. Sess. Laws, 215-409, pg. 409 (Insurance Code Adoption, eff. July 1, 1957, by 26th Legislature, Regular Session, House Bill No. 501, eff. date § 119; repeals at pgs. 408-409).
The then new 1957 Insurance Code continued to state "Assignment of this policy shall not be valid except with the written consent of this Company" in the form for fire insurance in the new Article 48 "Property Insurance," and codified at 36 O.S. § 4803. This language continues to be codified in the policy form at 36 O.S.2011 § 4803.

[22] Shadid v. American Druggist Fire Ins. Co., 386 P.2d at 312.

[23] 45 C.J.S. Insurance § 762 (Westlaw 2020) citing Givaudan Fragrances Corporation v. Aetna Casualty & Surety Company, 227 N.J. 322, 151 A.3d 576 (2017), and 45 C.J.S. Insurance, supra, at § 749.

[24] See, e.g., Katrina Canal Breaches Litigation, 63 So.3d 955, 961 & n. 9 (La.2011) (prevailing American rule distinguishes between pre-loss and post-loss assignments), citing Conrad Brothers v. John Deere Ins. Co., 640 N.W.2d 231, 237 (Iowa 2001) and Antal's Restaurant, Inc. v. Lumbermen's Mutual Casualty Co., 680 A.2d 1386, 1388 (D.C.1996) and observations on the majority rule in several states); Kent General Hosp., Inc. v. Blue Cross & Blue Shield of Delaware, Inc., 442 A.2d 1368, 1370 (Del.1982) ("Courts distinguish between assignment of a policy by an insured, which might change the risk, and assignment of the mere right to receive payment, which is a fixed obligation of the insurer, enforcing contract provisions barring the former [i.e., assignment of a policy], but not those barring the latter [i.e., assignment of the right to receive payment]") (explanations added).

[25] In re Kaufman, 2001 OK 88, ¶ 8, n. 18, 37 P.3d 845, 851. citing Earth Products Co. v. Oklahoma City, 1968 OK 39, 441 P.2d 399, 404, which relied on Poling v. Condon-Lane Boom & Lumber Co., 55 W.Va. 529, 47 S.E. 279 (1904) and its discussion of a non-assignable contract where delectus personae is material to the contract.

[26] In re Kaufman, 2001 OK 88, ¶¶ 8-14, 37 P.3d at 851-853.

[27] Expressions of public policy are found in the federal and state constitutions, federal and state statutes, court decisions, and the common law. Berry and Berry Acquisitions, LLC v. BFN Properties LLC, 2018 OK 27, ¶ 14, n. 18, 416 P.3d 1061, 1069, quoting Darrow v. Integris Health, Inc., 2008 OK 1, ¶ 13, 176 P.3d 1204, 1212. See State Mut. Life Assur. Co. of Amer. v. Hampton, 1985 OK 19, 696 P.2d 1027, 1031-1032 (Courts applying slayer statutes have held that the automatic disqualification of a convicted beneficiary is merely an extension of a public policy common-law rule that no person should benefit from his or her own wrongful conduct, and 84 O.S. 1981 § 231 did not prevent application of this common law expression of public policy).

[28] Record on Accelerated Appeal, Tab 6, Defendants' Motion to Dismiss Triple Diamond Construction LLC, Oct. 4, 2019. Exhibit 1.

[29] In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 9, n. 1, 326 P.3d 496, 501, citing, W.R. Allison Enters., Inc. v. CompSource Okla., 2013 OK 24, ¶ 15, 301 P.3d 407, 411, and Head v. McCracken, 2004 OK 84, ¶ 13, 102 P.3d 670, 680.

[30] In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 9, n.2, 326 P.3d 496, 501, citing State ex rel. Bd. of Regents of Univ. of Oklahoma v. Lucas, 2013 OK 14, ¶ 15, 297 P.3d 378, 387; Cline v. Oklahoma Coalition for Reproductive Justice, 2013 OK 93, ¶ 14, 313 P.3d 253, 258--259, and Rogers v. Quiktrip Corp., 2010 OK 3, ¶ 11, 230 P.3d 853, 859.

[31] Samman v. Multiple Inj. Tr. Fund, 2001 OK 71, ¶ 13, 33 P.3d 302, 307.

[32] Siloam Springs Hotel v. Century Sur. Co., 2017 OK 14, ¶ 22, 392 P.3d 262, 268.

[33] Max True Plastering Company v. United States Fidelity & Guaranty Co., 1996 OK 28, 912 P.2d 861, 865 (words in an insurance policy "are given effect according to their ordinary or popular meaning).

[34] The appellate record does not contain the insurance policy. One exhibit in the record before us does contain a "declaration" from insurer's "Custodian of Records" referencing a "policy booklet and declaration of coverage." This page is attached to one page numbered "52" with paragraphs relating to the topics of nonrenewal, assignment, subrogation, and death, as well as an additional two pages labeled Homeowners Policy Declarations.

[35] Haworth v. Jantzen, 2006 OK 35, ¶ 13, 172 P.3d 193, 196 ("an insurance policy is a contract"); American Economy Ins. Co. v. Bogdahn, 2004 OK 9, ¶ 8, 89 P.3d 1051; 1054 ("Oklahoma law governing insurance coverage disputes is well-established. The foremost principle is that an insurance policy is a contract."); 36 O.S.Supp.2013 § 1250.2 (defining "insurance policy or insurance contract" for the Unfair Claims Settlement Practices Act).

[36] Graham v. Travelers Insurance Co., 2002 OK 95, ¶ 17, 61 P.3d 225, 229. Cf. Public Service Co. of Oklahoma v. State ex rel. Oklahoma Corp. Com'n, 2005 OK 47, ¶ 54, 115 P.3d 861, 884 (a part of every contract in this state is the law applicable to that contract).

[37] See, e.g., Mulford v. Neal, 2011 OK 20, n. 29, 264 P.3d 1173, 1184 (trial court properly construed policy as a contract of adhesion); Brown v. Patel, 2007 OK 16, ¶ 11, n. 8, 157 P.3d 117, 122 (insurance policy is a contract of adhesion).

[38] William Reynolds Vance, Handbook on the Law of Insurance, pg. 159 (West Pub. 1904) ("The completed contract of insurance is usually evidenced by a formal written instrument known as a 'policy.'").

[39] William Reynolds Vance, Handbook on the Law of Insurance, pg.138 (West Pub. 1904) (discussing some of the elements courts analyze to determine whether a complete contract of insurance exists). See also McMullan v. Enterprise Financial Group, Inc., 2011 OK 7, ¶ 15, 247 P.3d 1173, 1179 (elements courts examine to determine the existence of insurance include the presence of an insurable interest, a risk of loss, an assumption of the risk by the insurer, a general scheme to distribute the loss among the larger group of persons bearing similar risks; and the payment of a premium for the assumption of risk), citing with approval, Jim Click Ford, Inc. v. City of Tucson, 154 Ariz. 48, 739 P.2d 1365 (1987); Poteete v. MFA Mut. Ins. Co., 1974 OK 110, 527 P.2d 18, 20 (discussing similar elements of insurance contract).

[40] William Reynolds Vance, Handbook on the Law of Insurance, pg.1 (West Pub. 1904), relying in part on State ex rel. Sheets v. Pittsburg, C., C. & St. L. R. Co., 68 Ohio St. 9, 96 Am. St. Rep. 635, 67 N.E. 93, 96 (1903) (insurance is "a contract whereby, for an agreed premium, one party undertakes to compensate the other for loss on a specified subject by specified perils"). See also 36 O.S. 2011 § 102 ("'Insurance' is a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies.").

[41] 1957 Okla. Sess. Laws, 215-409, at pg. 369, § 3624 (Insurance Code Adoption, eff. July 1, 1957, by 26th Legislature, Regular Session, House Bill No. 501, § 119).
Some insurance contracts are specifically exempted from application of Article 36, but the exemptions are not an issue in this proceeding. 36 O.S.2011 § 3601 (listing insurance not subject to the provisions of Title 36 Article 36).

[42] West Florida Grocery Co. v. Teutonia Fire Insurance Co., supra, note 15.

[43] In Russell v. Prospect Lodge, 1935 OK 1226, 46 P.2d 478, we noted that the Court had followed a holding in West Florida relating to a garnishment principle in both Jacobs v. Colcord, 1929 OK 181, 275 P. 649; and Ray v. Paramore, 1935 OK 124, 41 P.2d 73. Russell, 46 P.2d at 480.

[44] American Alliance relied on Alkan v. New Hampshire Ins. Co., 53 Wis. 136, 10 N. W. 91 (1881). American Alliance, 319 P.2d at 298. See the discussion of West Florida, Georgia Fire Ass'n v. Borchardt, and reliance on Alkan at note 16, supra. Alkan was also used by Vance, Insurance, explaining assignment of a money demand or chose in action is not prohibited by language prohibiting assignment of a policy. See note 17, supra.

[45] Walton v. Colonial Penn Ins. Co., 1993 OK 115, 860 P.2d 222, 225.

[46] Murphey v. Liverpool & L. & G. Ins. Co., 1922 OK 275, 214 P. 695, 697.

[47] Murphey v. Liverpool, 214 P. at 697, relying upon 1 & 3 Cooley, Insurance, pgs. 630, & 2610, and reliance on Knarston v. Manhattan Life Ins. Co., 140 Cal. 57, 73 Pac. 740 (1903).

[48] Characterizing post-loss assignment as not increasing an insurer's risk is consistent with courts examining an insurer's risk relating to personal insurance and concluding an assignment to a mortgagee of insurance proceeds did not increase the insurer's risk. See, e.g., Whiting v. Burkhardt, 178 Mass. 535, 60 N.E. 1, 52 L.R.A. 788, 86 Am.St.Rep. 503 (1901) (transfer of right to policy proceeds to the assignee of a mortgage was not a transfer of the policy but a transfer of the right to receive payment). Cf. Kintzel v. Wheatland Mutual Insurance Association, 203 N.W.2d 799, 808, 65 A.L.R. 3d 1110 (Iowa 1973) ("the general rule that an assignment of the note and mortgage carries with it such rights as existed in the assignor with respect to the ancillary insurance policy, without the consent of the insurer") (collecting cases).

[49] The insurance policy is not in the record on appeal, and whether a policy may prevent an assignment of a chose in action presents a hypothetical issue. We need not address this hypothetical issue. Gaasch, Estate of Gaasch v. St. Paul Fire and Marine Insurance Company, 2018 OK 12, n. 23, 412 P.3d 1151 (Court does not address hypothetical issues in an appeal).

[50] Record on Accelerated Appeal, Tab 8, reply in support of defendants' motion to dismiss, Nov. 20, 2019, pg. 1.

[51] Miller v. National Life & Acc. Ins. Co., 1978 OK 92, 588 P.2d 1978, 1081 ("We have repeatedly held that when ambiguity exists in the meaning of an insurance contract the doubt is to be resolved against the company."), quoting Combined Mut. Cas. Co. v. Metheny, 1950 OK 269, 223 P.2d 533, 535.

[52] Chamberlin v. Chamberlin, 1986 OK 30, 720 P.2d 721, 723-724; Okla. Sup. Ct. Rule 1.36 (accelerated procedure for summary judgments and certain dismissals).

[53] Chamberlin v. Chamberlin, 720 P.2d at 723-724.

[54] House of Realty, Inc. v. City of Midwest City, 2004 OK 97, ¶ 6, 109 P.3d 314, 317.

[55] Okla. Sup. Ct. R. 1.6(a) ("Where the facts relied upon are not of record in the Supreme Court, the motion or response shall be supported by affidavit.").

[56] 1983 OK 84, 669 P.2d 768.

[57] Mann, 1983 OK 84, 669 P.2d at 772.

[58] Mann, 1983 OK 84, 669 P.2d at 770-772

[59] First Pryority Bank v. Moon, 2014 OK CIV APP 21, ¶ 53, 326 P.3d 528, 539 (Division I) citing Chimney Rock Ltd. Partnership v. Hongkong Bank of Canada, 1993 OK CIV APP 94, 857 P.2d 84, 88 (Division III).

[60] 1993 OK CIV APP 94, 857 P.2d 84.

[61] 1993 OK CIV APP 94, 857 P.2d 84, 87-88. See also Rose Group, L.L.C. v. Miller, 2003 OK CIV APP 18, ¶ 4, 64 P.3d 573, 575 (Division I) (pure tort not assignable); United Adjustment Services, Inc. v. Professional Insurors Agency, LLC, 2013 OK CIV App 67, ¶ 20, 307 P.3d 400, 404 (Division II) (same).

[62] Chimney Rock, 857 P.2d at 88.

[63] Momand, 37 F.Supp. at 652, relying on Sullivan v. Associated Billposters and Distributors, 6 F.2d 1000, 1004, 42 A.L.R. 503 (2nd Cir. 1925).

[64] See, e.g., Cooper v. Runnels, 48 Wash.2d 108, 291 P.2d 657, 658-660 (1955) (discussing Stat. 4 Edw. III, chapter 7 [1330], assigning a tort action based on damage to property, and stating "The test of assignability is: Does the cause of action survive to the personal representative of the assignor? If it does, the cause of action is assignable."); Clements v. ITT Hartford, 1999 OK CIV APP 6, 973 P.2d 902 (bad faith claim survived the death of the insured as a cause of action because it was "injury to the person" as well as injury to the "personal estate" that survived the insured's death); Shafer v. Grimes, 23 Iowa 550, 553-554 (1868) (discussing common law rule actio personalis moritor cum persona as including actions ex delicto for injuries to the person [which die with the person] and distinguished from injuries to property, the change in the common law rule due to 4 Edward III, supra, and Stat. 3 and 4 Wm. IV, chap. 42, § 2 [1833] with the latter providing survival for an action against trespasser to property); Essex Ins. Co. v. Five Star Dye House, Inc., (2006) 38 Cal.4th 1252, 45 Cal.Rptr.3d 362, 137 P.3d 192, 198 ("Actions for bad faith against an insurer have generally been held to be assignable.").

[65] See, e.g., Cales v. Le Mars Mut. Ins. Co., 2003 OK CIV APP 41, 69 P.3d 1206 (trial court committed reversible error when it bifurcated contract and tort claims for trial).

[66] Indep. Sch. Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56, ¶ 52, & n. 73, 473 P.3d 475, 498.

[67] Torres v. Seaboard Foods, LLC, 2016 OK 20, n. 11, 373 P.3d 1057, 1081 (stating principle in the context of a public-law controversy).

[68] In re Kaufman, 2001 OK 88, ¶ 8, 37 P.3d 845, 851 (an assignment is the expressed intent of one party to pass rights owned to another); Mid-Continent Petroleum Corp. v. Blackwell Oil & Gas Co., 1932 OK 281, 15 P.2d 1028, 1031 (a contract must be so interpreted as to give effect to the mutual intention of the parties at the time of contracting).

[69] Independent School Dist. No. 52 of Okla. Cnty. v. Hofmeister, 2020 OK 56, ¶ 52, 473 P.3d 475, 497 ("We require parties to preserve error with proper argument and authority, or the error is waived for the appeal."). The issue was not raised by insurer's motion to dismiss filed in the trial court.




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1993 OK CIV APP 94, 857 P.2d 84, 64 OBJ 2517, Chimney Rock Ltd. Partnership v. Hongkong Bank of Canada
Discussed at Length
 2003 OK CIV APP 18, 64 P.3d 573, ROSE GROUP, L.L.C. v. MILLER
Discussed
 2003 OK CIV APP 41, 69 P.3d 1206, CALES v. LE MARS MUTUAL INSURANCE COMPANY
Discussed
 2013 OK CIV APP 67, 307 P.3d 400, UNITED ADJUSTMENT SERVICES, INC. v. PROFESSIONAL INSURORS AGENCY, LLC
Discussed
 2014 OK CIV APP 21, 326 P.3d 528, FIRST PRYORITY BANK v. MOON
Discussed
 1999 OK CIV APP 6, 973 P.2d 902, 70 OBJ 490, Clements v. ITT Hartford
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1993 OK 4, 846 P.2d 1088, 64 OBJ 334, Great Plains Federal Sav. and Loan Ass'n v. Dabney
Discussed
 1993 OK 115, 860 P.2d 222, 64 OBJ 2876, Walton v. Colonial Penn Ins. Co.
Discussed
 1997 OK 37, 936 P.2d 916, 68 OBJ 1266, A-Plus Janitorial & Carpet Cleaning v. Employers' Workers' Compensation Assoc.
Discussed
 1935 OK 124, 41 P.2d 73, 170 Okla. 495, RAY v. PARAMORE
Discussed
 1957 OK 312, 319 P.2d 295, AMERICAN ALLIANCE INS. CO. OF N.Y. v. McCALLIE
Discussed
 2001 OK 71, 33 P.3d 302, 72 OBJ 2703, SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed
 2001 OK 88, 37 P.3d 845, 72 OBJ 3061, IN RE: KAUFMAN
Discussed at Length
 1932 OK 281, 15 P.2d 1028, 159 Okla. 35, MID-CONTINENT PETROLEUM CORP. v. BLACKWELL OIL & GAS CO.
Discussed
 1962 OK 197, 375 P.2d 873, AMERICAN IRON & M. WKS. v. INSURANCE CO. OF N. AM.
Discussed
 1922 OK 275, 214 P. 695, 89 Okla. 207, MURPHEY v. LIVERPOOL & LONDON & GLOBE INS. CO.
Discussed
 1963 OK 146, 386 P.2d 311, SHADID v. AMERICAN DRUGGIST FIRE INSURANCE COMPANY
Discussed at Length
 1967 OK 245, 436 P.2d 654, LOWDER v. OKLAHOMA FARM BUREAU MUTUAL INS. CO.
Discussed
 2002 OK 34, 55 P.3d 1030, BITUMINOUS CASUALTY CORP. v. COWEN CONSTRUCTION, INC.
Discussed
 1968 OK 39, 441 P.2d 399, EARTH PRODUCTS COMPANY v. OKLAHOMA CITY
Discussed
 1974 OK 110, 527 P.2d 18, POTEETE v. MFA MUTUAL INSURANCE COMPANY
Discussed
 2002 OK 95, 61 P.3d 225, GRAHAM v. TRAVELERS INSURANCE COMPANY
Discussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed
 2003 OK 96, 81 P.3d 652, FULSOM v. FULSOM
Discussed
 2004 OK 9, 89 P.3d 1051, AMERICAN ECONOMY INSURANCE COMPANY v. BOGDAHN
Discussed at Length
 2004 OK 84, 102 P.3d 670, HEAD v. McCRACKEN
Discussed
 2004 OK 97, 109 P.3d 314, HOUSE OF REALTY, INC. v. CITY OF MIDWEST CITY
Discussed
 2005 OK 47, 115 P.3d 861, PUBLIC SERVICE CO. OF OKLA. v. STATE ex rel. OKLA. CORP. COMM'N
Discussed
 1996 OK 28, 912 P.2d 861, 67 OBJ 806, Max True Plastering Co. v. U.S. Fidelity and Guar. Co.
Discussed
 2006 OK 35, 172 P.3d 193, HAWORTH v. JANTZEN
Discussed
 2006 OK 100, 151 P.3d 132, MAY v. MID-CENTURY INSURANCE COMPANY
Discussed
 2007 OK 16, 157 P.3d 117, BROWN v. PATEL
Discussed
 1929 OK 181, 275 P. 649, 136 Okla. 158, JACOBS v. COLCORD
Discussed
 2007 OK 61, 170 P.3d 359, WESTON v. INDEP. SCHOOL DIST. NO. 35 OF CHEROKEE COUNTY
Cited
 2008 OK 1, 176 P.3d 1204, DARROW v. INTEGRIS HEALTH, INC.
Discussed
 2010 OK 3, 230 P.3d 853, ROGERS v. QUIKTRIP CORP.
Discussed
 2011 OK 7, 247 P.3d 1173, McMULLAN v. ENTERPRISE FINANCIAL GROUP, INC.
Discussed
 2011 OK 20, 264 P.3d 1173, MULFORD v. NEAL
Discussed
 2013 OK 14, 297 P.3d 378, STATE ex rel. BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA v. LUCAS
Discussed
 2013 OK 24, 301 P.3d 407, W.R. ALLISON ENTERPRISES, INC. v. COMPSOURCE OKLAHOMA
Discussed
 1974 OK 147, 534 P.2d 1293, WILEY v. TRAVELERS INSURANCE COMPANY
Discussed
 2013 OK 93, 313 P.3d 253, CLINE v. OKLAHOMA COALITION FOR REPRODUCTIVE JUSTICE
Discussed
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed at Length
 1976 OK 195, 558 P.2d 400, TORRES v. SENTRY INSURANCE
Discussed
 2014 OK 112, 341 P.3d 673, TUCKER v. THE COCHRAN FIRM-CRIMINAL DEFENSE BIRMINGHAM L.L.C.
Discussed
 1977 OK 178, 572 P.2d 966, RETHERFORD v. HALLIBURTON CO.
Discussed
 2016 OK 20, 373 P.3d 1057, TORRES v. SEABOARD FOODS, LLC
Discussed
 1978 OK 92, 588 P.2d 1078, MILLER v. NATIONAL LIFE & ACC. INS. CO.
Cited
 2016 OK 114, 385 P.3d 64, MARTIN v. GRAY
Discussed
 2016 OK 118, 392 P.3d 706, LAUBENSTEIN v. BODE TOWER, L.L.C.
Discussed
 2017 OK 14, 392 P.3d 262, SILOAM SPRINGS HOTEL, LLC v. CENTURY SURETY COMPANY
Discussed
 2017 OK 57, 398 P.3d 11, HENSLEY v. STATE FARM FIRE AND CASUALTY CO.
Discussed
 2018 OK 12, 412 P.3d 1151, GAASCH v. ST. PAUL FIRE AND MARINE INSURANCE CO.
Discussed
 2018 OK 27, 416 P.3d 1061, BERRY AND BERRY ACQUISITIONS v. BFN PROPERTIES
Discussed
 2019 OK 6, 441 P.3d 1094, MCINTOSH v. WATKINS
Discussed
 2019 OK 59, 451 P.3d 125, I. T. K. v. MOUNDS PUBLIC SCHOOLS
Discussed
 2020 OK 30, 465 P.3d 1213, FARLEY v. CITY OF CLAREMORE
Discussed
 2020 OK 31, PAYNE v. KERNS
Cited
 2020 OK 56, INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER
Discussed at Length
 1935 OK 1226, 46 P.2d 478, RUSSELL v. PROSPECT LODGE NO. 106
Discussed
 2000 OK 21, 1 P.3d 987, 71 OBJ 778, ACCOSIF v. American States Ins. Co.
Discussed at Length
 1950 OK 269, 223 P.2d 533, 203 Okla. 522, COMBINED MUT. CAS. CO. v. METHENY
Discussed
 1998 OK 92, 967 P.2d 1214, 69 OBJ 3242, City of Tulsa v. State ex rel. Public Employees Relations Board
Discussed
 1983 OK 84, 669 P.2d 768, Mann v. State Farm Mut. Auto. Ins. Co.
Discussed at Length
 1985 OK 19, 696 P.2d 1027, 56 OBJ 578, State Mut. Life Assur. Co. of America v. Hampton
Discussed
 1986 OK 30, 720 P.2d 721, 57 OBJ 1415, Chamberlin v. Chamberlin
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Discussed
 12 O.S. 2017, Parties Plaintiff and Defendant - Capacity
Discussed at Length
Title 36. Insurance
 Cite
Name
Level

 36 O.S. 4803, Standard Policy Provisions - Permissible Variations
Cited
 36 O.S. 1250.2, Definitions
Cited
 36 O.S. 102, "Insurance" Defined
Cited
 36 O.S. 3601, Scope of Article
Cited
 36 O.S. 3624, Assignment of Policies
Discussed at Length
Title 60. Property
 Cite
Name
Level

 60 O.S. 312, Thing in Action
Discussed
 60 O.S. 313, Same - May be Transferred
Discussed
Title 84. Wills and Succession
 Cite
Name
Level

 84 O.S. 231, Person Causing Death or Committing Abuse or Neglect Not to Inherit Nor Benefit by Insurance of Decedent
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA